NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 11-1245
_____

UNITED STATES OF AMERICA

v.

LAWRENCE MURRAY,

Appellant
_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. No. 2-10-cr-00016-001)
District Judge: Honorable Petrese B. Tucker
_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
January 23, 2012

Before: FISHER and GREENAWAY, JR., *Circuit Judges*, and JONES,[*] *District Judge*.

(Filed: March 8, 2012)
_____

OPINION OF THE COURT
_____

_____

[*]The Honorable John E. Jones, III, District Judge for the United States District
Court for the Middle District of Pennsylvania, sitting by designation.

FISHER, *Circuit Judge*.

Lawrence Murray appeals from a judgment of conviction and sentence of the U.S. District Court for the Eastern District of Pennsylvania. For the following reasons, we will affirm the judgment of conviction and remand for resentencing.

I.

We write principally for the parties, who are familiar with the factual context and legal history of this case. Therefore, we will set forth only those facts necessary to our analysis.

On January 7, 2000, a federal grand jury returned a nineteen-count indictment charging Lawrence Murray ("Murray") with conspiracy to defraud the Internal Revenue Service ("IRS"), in violation of 18 U.S.C. § 371 (Count 1); aiding, assisting and counseling the filing of false tax returns, in violation of 26 U.S.C. § 7206(2) (Counts 2-14); bank fraud, in violation of 18 U.S.C. § 1344 (Count 15); wire fraud and aiding and abetting wire fraud, in violation of 18 U.S.C. §§ 1343, 1349, and 2 (Count 16); making false statements to U.S. Citizenship and Immigration Services ("CIS"), in violation of 18 U.S.C. § 1001 (Count 17); and filing false tax returns, in violation of 26 U.S.C. § 7206(1) (Counts 18 and 19).[1] The following facts were elicited at trial, which commenced on October 13, 2010.

---

[1] Co-defendant Ingrid Guthrie was also charged in Counts 1 through 14. Guthrie did not appeal.

Between 2005 and 2010, Murray operated a tax consulting business, the Tax Doctor Corporation ("TDC"). According to testimony of TDC clients and employees, Murray advised high-income taxpayers how to fraudulently structure personal and business finances to maximize tax deductions and minimize tax burdens. Among other services, TDC would form shell corporations for its clients, and Murray would advise clients in deducting personal living expenses as business expenses of these corporations and in moving money between shell corporations in order to fabricate "expenses" for "contracted services" or "management fees." Murray also advised clients in the creation of false corporate board minutes for the shell corporations. Murray's goal for his clients was to reduce their taxable income to zero by using these strategies, and he charged his clients between 20 and 35 percent of the tax savings they could expect to realize in the first year. He used the same techniques to reduce his own tax burden.

Murray also aided clients who, because their tax returns showed zero income, encountered difficulties in obtaining loans. For two clients, Murray created false tax returns showing higher income than the returns filed with the IRS so that they could use the false returns in applying for mortgage and business loans. Though Murray prepared and sent these returns to his clients, the clients never used them in their loan applications.

In 2007, Murray applied for a visa for his Chinese fiancée to join him in the United States. To demonstrate that he would be able to financially support his foreign spouse, Murray submitted false tax returns and a letter that purported to be from an

3

independent accountant who had prepared the returns.  In reality, Murray had prepared the returns and the letter was written by one of his employees.

Murray was convicted on all charges, and the District Court denied his subsequent motions for judgment of acquittal or a new trial.  Murray was sentenced to 170 months' imprisonment and five years of supervised release.  The District Court also ordered Murray to pay restitution of $3,331,825.53 and a special assessment of $1,900.  Murray timely appealed.

## II.

The District Court had jurisdiction pursuant to 18 U.S.C. § 3231.  We have jurisdiction to review the conviction pursuant to 28 U.S.C. § 1291 and the sentence pursuant to 18 U.S.C. § 3742.

Murray challenges his convictions on grounds of evidentiary error and sufficiency of the evidence.  We review a district court's decision to admit evidence for abuse of discretion, *United States v. Serafini*, 233 F.3d 758, 768 n.14 (3d Cir. 2000), including where such admission implicates the Confrontation Clause.  *United States v. Williams*, 464 F.3d 443, 448 (3d Cir. 2006).  In reviewing the sufficiency of the evidence, we "view the evidence in the light most favorable to the government, and will sustain the verdict if any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *United States v. Dent*, 149 F.3d 180, 187 (3d Cir. 1998) (internal marks and quotation omitted).  In considering Murray's sentencing arguments, we

4

exercise plenary review over the District Court's interpretation of the Sentencing Guidelines, and review factual findings for clear error. *United States v. Grier*, 475 F.3d 556, 570 (3d Cir. 2007). We review sentences for both procedural and substantive reasonableness, applying an abuse of discretion standard. *United States v. Tomko*, 562 F.3d 558, 567 (3d Cir. 2009) (en banc).

III.

A.

We begin with Murray's evidentiary challenges. Murray first submits that the prosecution improperly vouched for several government witnesses by examining them on immunity letters from the U.S. Attorney's Office. This argument is meritless. "Vouching constitutes an assurance by the prosecuting attorney of the credibility of a Government witness through personal knowledge or by other information outside of the testimony before the jury." *United States v. Walker*, 155 F.3d 180, 184 (3d Cir. 1998) (citations omitted). Here, the prosecutor did not refer to information or personal knowledge outside of the evidence, but simply introduced and examined witnesses on immunity agreements to aid the jury in evaluating witness credibility. It is well established that a prosecutor may introduce evidence of plea agreements with the government to inform the jury's assessment of witness credibility and bias, *United States v. Universal Rehab. Servs., Inc.*, 205 F.3d 657, 665 (3d Cir. 2000) (en banc), and we see no substantive difference between plea agreements and the immunity agreements at issue

5

here.  *See, e.g.*, *United States v. Hansen*, 434 F.3d 92, 101 (1st Cir. 2006).  Further, the prosecution need not wait for the defendant to impeach a witness to introduce such agreements.  *Universal Rehab.*, 205 F.3d at 666.  We reject this argument accordingly.

Murray next submits that the testimony by two of his former attorneys in reviewing the contents of letters they had prepared for an IRS audit violated his rights under the Confrontation Clause.  He contends that he lacked a meaningful opportunity to cross-examine the attorneys because doing so would have entailed a waiver of his attorney-client privilege.  However, the privilege did not extend to the representations made in these letters, which comprised the sole topic of their testimony.  "The privilege 'protects *only* those disclosures – necessary to obtain informed legal advice – which might not have been made absent the privilege.'"  *Westinghouse Elec. Corp. v. Rep. of Philippines*, 951 F.2d 1414, 1423-24 (3d Cir. 1991) (quoting *Fisher v. United States*, 425 U.S. 391, 403 (1976)).  Absent certain exceptions, "it is well-settled that when a client voluntarily discloses privileged communications to a third party, the privilege is waived [as to those communications]."  *Id.* at 1424.  We have rejected the notion that voluntary disclosure to government agencies qualifies as an exception to this waiver rule, *see id.* at 1424-27, and therefore the contents of these letters were not protected.  And because the government only introduced these letters to review the contents with the attorneys, Murray was free to cross-examine these witnesses on the full scope of their direct testimony without fear of waiver.  This opportunity was more than sufficient to satisfy

the Confrontation Clause. *See Delaware v. Van Arsdall*, 475 U.S. 673, 679 (1986) ("[T]he Confrontation Clause guarantees an opportunity for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defense might wish." (quoting *Delaware v. Fensterer*, 474 U.S. 15, 20 (1985) (per curiam)). Accordingly, this claim is baseless.

Murray also submits that the evidence was insufficient to support a conviction for bank fraud and wire fraud (Counts 15 and 16) and false statements (Count 17). Neither argument is persuasive. First, Murray argues that his conduct in preparing false tax returns for his clients' loan applications did not evince an intent to defraud the bank, as is required for bank fraud under 18 U.S.C. § 1344. *See United States v. Khorozian*, 333 F.3d 498, 503 (3d Cir. 2003). Murray observes that he never directly presented the false tax returns to any bank, but rather emailed them to his clients, who never used them. He argues accordingly that his conduct did not expose the banks to a "risk of loss," proof of which is sufficient to satisfy § 1344's intent requirement. *See id.* at 505.

Murray's argument is misplaced because § 1344 does not require that the defendant make direct representations to the bank, just that the defendant "engaged in a scheme to defraud," *United States v. Goldblatt*, 813 F.2d 619, 624 (3d Cir. 1987), which targets a bank. *See United States v. Leahy*, 445 F.3d 634, 646-48 (3d Cir. 2006). Moreover, only "where the bank is *not* the 'target of deception,' but rather merely an 'unwitting instrumentality,'" does § 1344 require that the defendant's conduct expose the

7

bank to a risk of loss. *Id.* (emphasis added). Murray's scheme satisfies the intent requirement under either standard: he prepared false tax returns that overstated his clients' incomes to assist them in obtaining loans on more advantageous terms, thereby targeting the bank and increasing the lenders' risk of loss. That his fraudulent representations did not come to fruition – because his clients never submitted the returns with their loan applications – is immaterial. *See Khorozian*, 333 F.3d at 505 n.6. The evidence was therefore sufficient to support his conviction.[2]

Finally, the evidence was sufficient to convict Murray for false statements, in violation of 18 U.S.C. § 1001, based on his letter to CIS. A conviction for false statements under § 1001 requires, in part, that the false statement was "material." *United States v. Barr*, 963 F.2d 641, 645 (3d Cir. 1992). Murray argues that the letter was "extraneous" to the visa application, and therefore does not meet § 1001's materiality requirement. Whether the letter was required for the application, however, is irrelevant. Rather, to qualify as material, "[t]he statement must have a natural tendency to influence, or [be] capable of influencing, the decision of the decisionmaking body to which it was addressed." *United States v. Gaudin*, 515 U.S. 506, 509 (1995) (quotation marks and

---

[2] Murray was also properly convicted on Count 16 for wire fraud and attempted wire fraud, in violation of 18 U.S.C. §§ 1343 and 1349, for emailing the false tax returns to his clients. Murray erroneously treats his conviction on Count 16 as a bank fraud offense, and contests this conviction on the grounds that the false returns were never actually submitted to the bank. He misses the mark here as well: the scheme to defraud need not come to fruition so long as the defendant had the intent to defraud. *United States v. Frey*, 42 F.3d 795, 800 (3d Cir. 1994).

8

citation omitted). Moreover, an agency need not actually rely on the statement in making a decision. *United States v. McBane*, 433 F.3d 344, 350 (3d Cir. 2005). In this instance, the false statements in the letter, including representations that the letter was written by Murray's accountants and that it was truthful, were "capable of influencing" CIS. Indeed, the entire purpose of the letter was to assure CIS that an independent party could vouch for Murray's financial capabilities, and a CIS agent testified that, had CIS been aware that the letter was fraudulent, CIS would have rejected the application outright. Accordingly, the false statements at issue were material.

B.

Murray also contests his sentence on three grounds: the application of a U.S.S.G. § 2T1.1(b)(1) enhancement for criminally derived income; the propriety of the extrapolation used to estimate the tax loss from the fraud; and the reasonableness of the downward departure based on Murray's age and health.

We review a criminal sentence in "two stages." *Tomko*, 562 F.3d at 567. We first review for procedural error, "such as failing to calculate (or improperly calculating) the Guidelines range, treating the Guidelines as mandatory, failing to consider the § 3553(a) factors, selecting a sentence based on clearly erroneous facts, or failing to adequately explain the chosen sentence—including an explanation for any deviation from the Guidelines range." *Id.* (quoting *Gall v. United States*, 552 U.S. 38, 51 (2007)). Absent procedural error, we then review for substantive reasonableness, and "will affirm [the

9

sentence] unless no reasonable sentencing court would have imposed the same sentence on that particular defendant for the reasons the district court provided." *Id.* at 568.

First, we agree with the parties that the § 2T1.1(b)(1) enhancement for criminally derived income was erroneously applied in this case. A two-level enhancement under § 2T1.1(b)(1) is called for "[i]f the defendant failed to report or to correctly identify the *source* of income exceeding $10,000 in any year from criminal activity . . . ." (emphasis added). This enhancement compensates for offenses where the amount of criminally derived income is "difficult to establish" and "substantially understated." U.S.S.G. § 2T1.1 background. The PSR applied the enhancement because the TDC tax returns "include deductions totaling $428,521 and $792,439," and therefore, did not correctly identify the income generated by TDC. However, as the Government observes, although Murray filed false tax returns, he did not fail to identify TDC as the source of criminally derived income. Rather, he claimed improper deductions under "contracting services" to reduce taxable income, which protected the income from taxation, but did not make it difficult to ascertain. Accordingly, the enhancement was not applicable.

We reject, however, Murray's argument that the estimate of tax loss did not qualify as "reasonable " under U.S.S.G. § 2T1.1. Murray contends that the Government should have calculated the actual tax loss by auditing each tax return filed by TDC's clients, and that the sample returns on which the extrapolation was based were not representative of the entire body of TDC clients. Murray's initial attack is misplaced,

10

because, as the Sentencing Guidelines readily acknowledge, "in some instances, . . . the amount of the tax loss may be uncertain," in which case, "the guidelines contemplate that the court will simply make a reasonable estimate based on the available facts."  U.S.S.G. § 2T1.1 app. note 1.  The government is "not obligated to pore through the tax returns of all of the participants" in the scheme to calculate the most precise estimate of tax loss, as long as its estimate is "reasonable and based on reliable facts."  *United States v. Gricco*, 277 F.3d 339, 356 (3d Cir. 2002).  Accordingly, reliable extrapolations from representative sample data may be used to estimate the tax loss.  *Compare United States v. Bryant*, 128 F.3d 74, 76 (2d Cir. 1997) (extrapolation from sample returns reliably estimated total tax loss), *with United States v. Mehta*, 594 F.3d 277, 283 (4th Cir. 2010) (extrapolation not reliable because sample not representative of remaining returns).

In this case, the PSR provided three estimates of the tax loss, of which the District Court adopted the most conservative – the extrapolation of 46 returns by 20 TDC clients audited by the IRS.  The fraudulent returns filed by these 20 clients resulted in a tax loss of $955,077.  A multiplier of three was then used to estimate the total tax loss from at least 107 clients – over five times the number of clients in the sample – to yield $2,865,231.[3]  These calculations provided a "coherent factual basis" for the extrapolation, thereby meeting the government's burden in establishing a "reasonable estimate."

---

[3] Murray does not dispute the estimate of tax losses from false returns filed by Murray and his co-defendant, Guthrie, which, together with the extrapolated losses from the false client returns, yielded a total tax loss of $3,331,825.53.

*Gricco*, 277 F.3d at 358. And aside from Murray's speculation, there is no indication that these returns were "flagged" for any characteristic that would distort the resulting calculations, *see Mehta*, 594 F.3d at 283, because the clients were of the same income class, Murray gave the same advice and used the same techniques in structuring these returns, and the goal for each client was to show zero taxable income. Moreover, a multiplier of three for 20 clients was "highly generous," *Bryant*, 128 F.3d at 76, considering that over 100 TDC were clients involved in the scheme. Accordingly, the government established a reasonable estimate of the tax loss.

Murray next argues that the District Court did not impose a reasonable sentence in light of Murray's age and health status. The District Court expressly considered age and health as factors under § 3553(a), thereby satisfying our procedural review. *See Tomko*, 562 F.3d at 568. We are therefore left to review the sentence on these grounds for substantive reasonableness. *See id.* at 568-69. However, having determined that the District Court procedurally erred in applying a two-level enhancement under U.S.S.G. § 2T1.1(b)(1), it is unnecessary to consider the substantive reasonableness of Murray's sentence at this juncture in light of the fact that he will be resentenced. *See United States v. Langford*, 516 F.3d 205, 213-15 (3d Cir. 2008).

## IV.

For the foregoing reasons, we will affirm the judgment of conviction, and remand for resentencing.