[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 11-14698
_____

D. C. Docket No. 0:11-cr-60047-UU-1

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

ERICA HALL,

Defendant-Appellant.
_____

Appeal from the United States District Court
for the Southern District of Florida
_____

(January 16, 2013)

Before DUBINA, Chief Judge, PRYOR and HILL, Circuit Judges.

DUBINA, Chief Judge:

Appellant Erica Hall ("Hall") pled guilty to conspiracy to commit bank

fraud, in violation of 18 U.S.C. § 1349 (Count 1); conspiracy to commit identity

theft and access device fraud, in violation of 18 U.S.C. § 371 (Count 2); and

wrongfully obtaining and transferring individually identifiable health information for personal gain, in violation of 42 U.S.C. § 1320d-6(a)(2) (Count 3).  When imposing Hall's sentence, the district court applied a four-level enhancement under U.S.S.G. § 2B1.1(b)(2)(B) because it found that the offense involved more than 50 but fewer than 250 victims.  In objecting to the enhancement, Hall argued that the mere transfer or sale of identifying information unlawfully or without authority does not equate to the actual use of identifying information for a fraudulent purpose.  Therefore, because the conspirators actually used only identifying information for 12 out of 141 individuals to obtain fraudulent credit cards, Hall argued that the two-level enhancement under U.S.S.G. § 2B1.1(b)(2)(A) was more appropriate because it applies to more than 10 but fewer than 50 victims.  The district court rejected Hall's argument, but we do not.  Accordingly, we vacate Hall's sentence and remand for resentencing.

## I.  BACKGROUND

Hall worked as an office assistant in a gynecological and obstetric health care office in Coral Springs, Florida.  In her capacity as an office assistant, Hall was authorized to access patient files and copy patient information to fulfill her job duties.  The sensitive information contained in the files included patient names, dates of birth, Social Security numbers, and medical information, which is

2

protected under the Health Insurance Portability and Accountability Act.  Hall provided this information via text message to either Rufus Bethea ("Bethea") or Hall's sister-in-law, Bianca Cook ("Cook"), who gave the information to Bethea. After receiving the information, Bethea would relay it to Courtney Gissendanner, one of the organizers of the scheme.  Cook informed Hall that she would receive $200 for each individual's information or $1000 if they used the information to successfully create a fraudulent account.  Hall received only $200 total in compensation, although she sent Cook or Bethea information for approximately 65 to 141 individuals.

Using the 2010 Guidelines Manual, the probation officer combined Hall's counts of conviction into a single group and assigned her a base offense level of seven under U.S.S.G. § 2B1.1(a)(1).  However, the probation officer recommended that Hall's offense level be adjusted to 18 based on: (1) a six-level enhancement under § 2B1.1(b)(1)(D) because the offense involved losses between $30,000 and $70,000; (2) a four-level enhancement under § 2B1.1(b)(2)(B) because the offense involved more than 50 but fewer than 250 victims; (3) a two-level increase under § 2B1.1(b)(10)(C)(ii) because the offense involved the possession of five or more means of identification that were unlawfully obtained by the use of another means of identification; (4) a two-level increase under § 3B1.3 because Hall abused a

3

position of public or private trust; and (5) a three-level decrease under § 3E1.1(a) and (b), based on Hall's timely acceptance of responsibility. Hall had zero criminal history points, which placed her in criminal history category I. This corresponded with an advisory guidelines range of 27 to 33 months' imprisonment.

After the probation officer prepared the presentence investigation report, the government notified Hall that she was responsible for unlawfully disclosing personal identifying information of 141 patients. The government also informed Hall that her co-conspirators used at least 12 of the patients' personal identifying information to obtain fraudulent credit cards. The government advised Hall that, in its view, all of the 141 patients whose information was transferred were victims under U.S.S.G. § 2B1.1(b)(2)(B) because the conspirators used their means of identification unlawfully and without the victims' authority. Hall filed various sentencing pleadings and specifically objected to the four-level enhancement based on the number of victims. She argued that, at most, she was responsible for the 12 victims whose identifying information was compromised when the conspirators used the information to obtain fraudulent credit cards. Hence, she urged the district court to apply the two-level enhancement under § 2B1.1(b)(2)(A).

At Hall's sentencing hearing, the district court addressed her objection to the four-level enhancement and concluded that the intentional transfer of information

4

in exchange for consideration constituted actual use for the purposes of § 2B1.1(b)(2)(B). Although it applied the four-level enhancement, the district court varied downward from 27 months to 14 months, based on factors related to Hall's personal background and family situation. The district court commented that a 14-month sentence struck a balance between the seriousness of the offense and the need for deterrence, especially in light of Hall's status as a first-time offender and her overall history of being a reliable and productive member of society. Thus, the district court imposed a sentence of 14 months' imprisonment on Counts 1 and 3, to run concurrently, and 2 years of supervised release on Counts 1, 2, and 3, to run concurrently, plus a $300 assessment and restitution. Hall then perfected this appeal.

## II.  ISSUE

Whether the district court erred in imposing a four-level enhancement to Hall's sentence because it determined that Hall's offense conduct, the unauthorized transfer of more than 141 individuals' identifying information, involved the actual use of that information for a fraudulent purpose such that all the individuals whose information was transferred were victims under U.S.S.G. § 2B1.1(b)(2)(B).

## III.  DISCUSSION

5

The question presented for our disposition is a novel one, and there is a paucity of helpful case law to assist us in our decision-making.[1] We must decide whether the unauthorized transfer of an individual's identifying information to another party involves the actual use of that information for a fraudulent purpose such that the individual whose identifying information was transferred is a victim under U.S.S.G. § 2B1.1(b)(2)(B). Because the district court concluded that the unauthorized transfer of a person's identifying information did constitute the actual use of that information, it applied the four-level enhancement pursuant to § 2B1.1(b)(2)(B) to Hall's sentence. On appeal, Hall challenges the district court's application of this enhancement to her sentence. Thus, we review the reasonableness of Hall's sentence. *See Gall v. United States*, 552 U.S. 38, 51, 128 S. Ct. 586, 597 (2007). A sentence is unreasonable if it contains significant procedural error, such as an improper calculation of the guidelines range. *Id*.

---

[1] We note at least two cases addressing the enhancement for the number of victims pursuant to U.S.S.G. § 2B1.1(b)(2): *United States v. Vasquez*, 673 F.3d 680 (7th Cir. 2012), and *United States v. Yummi*, 408 F. App'x 537 (3d Cir. 2010), *cert. denied*, ___ U.S. ___, 131 S. Ct. 1835 (2011). In *Vasquez*, the defendant's unemployment benefits scheme involved the use of 72 claimants' social security numbers to obtain the fraudulent unemployment benefits. Thus, the district court applied the four-level enhancement in § 2B1.1(b)(2)(B). In *Yummi*, the district court applied the two-level enhancement to the defendant's sentence because the defendant gathered personal identifying information from commercial databases, which he either received or sent through an email account, to complete his scheme of depleting the victims' bank accounts and credit lines. *Yummi*, 408 F. App'x at 539. These emails identified more than ten individuals from whom the defendant unlawfully obtained their identifying information and subsequently accessed their financial accounts. *Id.* The appellate court found application note 4E applicable in upholding the district court's application of the enhancement. *Id.* at 540.

Furthermore, we review *de novo* the district court's legal interpretation of the sentencing guidelines. *United States v. Fulford*, 662 F.3d 1174, 1177 (11th Cir. 2011).

Pursuant to the 2010 Guidelines Manual, a two-level enhancement is applied if the offense involved ten or more victims, and a four-level enhancement is applied if the offense involved more than 50 but fewer than 250 victims. U.S.S.G. § 2B1.1(b)(2)(A), (B). Thus, the appropriate enhancement calculation depends on the number of "victims" involved. In cases such as this, involving "means of identification,"[2] Application Note 4(E) provides that a "'victim' means (i) any victim as defined in Application Note 1; or (ii) any individual whose means of identification was *used* unlawfully or without authority." *Id.*, comment. (n.4(E)) (emphasis added).

The 12 individuals whose identifying information was used to obtain fraudulent credit cards are "victims" under (ii) of Application Note 4(E). It is not clear, however, that the remaining individuals whose identifying information Hall transferred are "victims" as explained in the commentary. These individuals are not "victims" under (i) of the commentary because they do not constitute victims

---

[2] "Means of identification" has the meaning given by 18 U.S.C. § 1028(d)(7), *see* U.S.S.G. § 2B1.1, comment. (n.1), and includes "any name or number that may be used, alone or in conjunction with any other information, to identify a specific individual, including any . . . name, social security number, date of birth, [and] official State or government issued driver's license or identification number." 18 U.S.C. § 1028(d)(7).

under Application Note 1, which defines a victim as "(A) any person who sustained any part of the actual loss . . . or (B) any individual who sustained bodily injury as a result of the offense." *See* U.S.S.G. § 2B1.1(b)(2)(A), (B), comment. (n.1). Therefore, whether these remaining individuals are "victims" for purposes of the enhancement at issue depends on whether their identification "was used" as provided in (ii) of Application Note 4E. *Id.*, comment. (n.4(E)).

To interpret this sentencing guideline enhancement, we begin with the language of the enhancement, and we apply traditional statutory construction rules to interpret it. *See Fulford*, 662 F.3d at 1177. First, we give the language in the guideline its plain and ordinary meaning, *see Bailey v. United States*, 516 U.S. 137, 145, 116 S. Ct. 501, 506 (1995) (defining the word "use" in 18 U.S.C. § 924(c)(1) and noting that the court gives the language its "ordinary or natural meaning" (internal quotation marks omitted)), because "[a]s with Congress, we presume that the Sentencing Commission said what it meant and meant what it said," *United States v. Shannon*, 631 F.3d 1187, 1190 (11th Cir. 2011) (internal quotation marks omitted). "We consider not only the bare meaning of the word but also its placement and purpose in the [guidelines]." *Bailey*, 516 U. S. at 145, 116 S. Ct. at 506. Hence, we focus on the context. *Id.* Further, when applying traditional statutory construction rules, we are mindful that "the specific inclusion of one

meaning in a definition excludes other meanings that are not included." *Fulford*, 662 F.3d at 1178. We will not rewrite the guidelines by reading definitions more broadly than their plain language indicates. *Id.; see also Nguyen v. United States*, 556 F.3d 1244, 1256 (11th Cir. 2009) ("We are not authorized to rewrite, revise, modify, or amend [the sentencing guidelines] in the guise of interpreting [them].").

When we apply the rules of statutory construction to the enhancement, we disagree with the district court's interpretation. We first consider the plain meaning of the word "used" as elaborated upon in Application Note 4E. As the Supreme Court noted in *Bailey*, the word "use" means "to convert to one's service," "[t]o employ," "to avail oneself of," and "to carry out a purpose or action by means of." 516 U.S. at 145, 116 S. Ct. at 506. In other words, "use" is the "application or employment of something . . . for the purpose for which it is adapted." Black's Law Dictionary 1681 (9th ed. 2009). "These various definitions of 'use' imply action and implementation." *Bailey*, 516 U.S. at 145, 116 S. Ct. at 506. On the contrary, the definition of "transfer" is "[t]o convey or remove from one place or one person to another; to pass or hand over from one to another, esp. to change over the possession or control of" and "[t]o sell or give." Black's Law Dictionary 1636. Transfer means something distinctly different than use.

9

The purpose of the conspiracy in this case was to obtain cash advances and purchase items by using fraudulent credit cards.  Hall's sale of the unauthorized identifying information to her co-conspirators did not implement the purpose of the conspiracy.  Hall's mere transfer of the personal identifying information, without more action, did not employ that information for the purpose for which the conspiracy was intended—the procurement of fraudulent credit cards and cash advances.  The personal identifying information was not used, as that term is ordinarily understood, until Hall's co-conspirators secured the fraudulent credit cards.  At that point, the 12 individuals whose personal information was compromised became victims for the § 2B1.1(b)(2) enhancement.

We note that later in § 2B1.1 under the specific offense characteristics, the Sentencing Commission ("Commission") stated that if the offense involved "the unauthorized transfer or use of any means of identification unlawfully to produce or obtain any other means of identification," the district court should enhance the defendant's base offense level by two.  U.S.S.G. § 2B1.1(b)(10).  The district court also applied this enhancement in imposing Hall's sentence.  It is telling that the Commission used the two terms "use" and "transfer" in this sentencing guideline.  We assume that the Commission "used two terms because it intended each term to have a particular, nonsuperfluous meaning." *Bailey*, 516 U.S. at 146, 116 S. Ct. at

10

507.  The Commission would not have used the two distinct words if they intended use to cover transfer.  We will not broaden the meaning of a sentencing enhancement beyond what the Commission intended.  *See Fulford*, 662 F.3d at 1178; *Nguyen*, 556 F.3d at 1256.

Moreover, in the application note to § 2B1.1(b)(10)(C)(i), the Commission stated that the subsection "applies in a case in which a means of identification of an individual other than the defendant . . . is used without that individual's authorization unlawfully to produce or obtain another means of identification." U.S.S.G. § 2B1.1, comment (n.9(C)(i)).  As an example to which this subsection applies, the Commission provided that when a defendant obtains an individual's personal identifying information and obtains a credit card in that individual's name, then the credit card is the other means of identification that has been obtained unlawfully.  *Id.*, comment. (n.9(C)(ii)(II)).  In this context, it is clear that a defendant must use the unauthorized identifying information to obtain unlawfully another means of identification.  *See, e.g., United States v. Vasquez*, 673 F.3d 680, 686–87 (7th Cir. 2012) (holding that district court did not plainly err in applying enhancement under § 2B1.1(b)(1)(C)(i) because defendant utilized actual individuals' social security numbers unlawfully to obtain PINs, another means of

11

identification, to execute an unemployment benefits scheme).  As such, the word

"use" has a definite, clear meaning.[3]

We conclude the guideline, its commentary, and application notes indicate

that the mere transfer of unauthorized identifying information is not the equivalent

to the actual use of the identifying information for a fraudulent purpose.  There is

nothing in the commentary or the application notes that contradicts this meaning of

the text of the guideline at issue.  *See United States v. Wilks*, 464 F.3d 1240, 1245

(11th Cir. 2006) ("When it comes to the interpretation of the guidelines,

Commentary and Application Notes of the Sentencing Guidelines are binding on

the courts unless they contradict the plain meaning of the text of the Guidelines."

(internal quotation marks omitted)).  Accordingly, we hold that the plain language

of the sentencing guideline at issue does not apply to Hall's mere sale or transfer of

the patients' identifying information.  The § 2B1.1(b)(2)(A) enhancement is the

appropriate one in Hall's sentencing because the purpose of the conspiracy was

realized when the conspirators used the 12 patients' identifying information to

---

[3] Furthermore, an amendment to the Guidelines Manual provides clarification into the meaning of the word "use" in the sentencing guideline at issue.  Amendment 726 amended portions of § 2B1.1, and it became effective in November 2009.  It provides that the definition of "victim" includes an individual whose means of identification is *used* unlawfully or without authority.  *See* U.S.S.G. app. C, amend. 726 (Nov. 2009) (emphasis added).  It clarifies that "[t]his new category of 'victim' for purposes of subsection (b)(2) is appropriately limited, however, to cover only those individuals whose means of identification are actually used." *Id.*

obtain the fraudulent credit cards.  Hence, we conclude that the district court procedurally erred in imposing Hall's sentence.

The district court imposed an unreasonable sentence because it misinterpreted the sentencing guideline enhancement.  We are aware that a misapplication of the guidelines will not ordinarily result in a reversal of an otherwise reasonable sentence if it is clear from the record that the district court would have imposed the same sentence absent any error.  *See United States v. Keene*, 470 F.3d 1347, 1350 (11th Cir. 2006).  However, it is not clear in this case whether the error affected the district court's sentence.  Accordingly, we vacate Hall's sentence and remand this case for the district court to resentence Hall consistent with this opinion.

**VACATED** and **REMANDED**.