[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 15-10001
Non-Argument Calendar
_____

D.C. Docket No. 1:12-cr-00016-RWS-GGB-1

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

PAUL L. BLACK,
a.k.a. Marcus Lively,
a.k.a. John Doe 1:11-MJ-1967,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Northern District of Georgia
_____

(February 1, 2017)

Before HULL, WILSON, and MARTIN, Circuit Judges.

PER CURIAM:

Paul Black appeals his 180-month sentence imposed after he pleaded guilty to aiding and abetting the possession of: (1) counterfeit access devices; (2) device-making equipment; (3) five or more false identification documents with the intent to use them; and (4) document-making equipment, in violation of 18 U.S.C. §§ 1028 and 1029.  Black argues on appeal that the district court clearly erred in finding that the total loss amount of his offense exceeded $20 million; that his offense involved more than 50 victims; and that he possessed a dangerous weapon in connection with his offense.  After careful review, we affirm.

## I.

On December 21, 2011, two people armed with shotguns broke into the home of Ednecdia Johnson and Paul Black in Jonesboro, Georgia.  Johnson called the Clayton County Police to report the home invasion while an altercation occurred.  When the police arrived, they found one of the burglars with a gunshot wound to his head and Black with a gunshot wound to his hand.  The police conducted a protective sweep of the home, and found a trail of blood leading to a room in the basement.  The door to this room was locked, and the door handle was also covered in blood.

The police forced open the door and saw inside blank credit cards, counterfeit drivers' licenses, blank check stock, equipment to produce credit cards and IDs, and about $200,000.  Based on what they saw, the police got a search

2

warrant and searched the home the next morning with Secret Service Special

Agents.  The contents in the basement room were the same as the day before, and

the officers arrested Johnson and Black.

The Secret Service's investigation found 97,922 unique credit and debit

account numbers and 887 physical counterfeit cards at the home.  The government

used 383 account numbers and 268 physical cards to statistically sample the total

loss amount for which Johnson and Black were responsible.  The selected samples

were subpoenaed, and the government found that 227 of the account numbers

(59% of that sample) and 133 of the physical cards (50% of that sample) were

valid.  The government used this rate of valid accounts to argue Black was

responsible for 59% of the 97,922 account numbers.  The government then

multiplied that number of accounts (57,774) by $500, the minimum loss amount

per account under United States Sentencing Guidelines § 2B1.1 cmt. n.3(F)(i),[1] to

arrive at a total loss amount of about $29 million.  For the number of victims, the

government did not use sampling and extrapolation because the relevant guidelines

enhancement required an individualized number.  Thus, the government argued

only that the actual 133 valid physical cards should be used to count the number of

victims.

At sentencing, Black's guidelines range was 235 to 293 months

---

[1] All citations to the United States Sentencing Guidelines refer to the 2014 edition that was in effect at the time of Black's sentencing.

imprisonment.  Black made several objections, including the 22-level enhancement he received because the loss amount was between $20 million and $50 million under USSG § 2B1.1(b)(1); the 4-level enhancement he received because the offense resulted in loss to more than 50 victims under USSG § 2B1.1(b)(2)(B); and the 2-level enhancement he received for possessing a dangerous weapon in connection with the offense under USSG § 2B1.1(b)(15)(B).  After overruling Black's objections, the district court sentenced him to the statutory maximum for each count, all to run concurrently, resulting in 180-months imprisonment.

## II.

Black first argues the district court erred because the government failed to prove a loss amount over $20 million with reliable and specific evidence.  The Guidelines increase a defendant's offense level for the amount of loss resulting from fraud or counterfeit instruments.  USSG § 2B1.1(b)(1).  When the loss is between $20 million and $50 million, the result is a 22-level enhancement.  Id. Black challenges the government's sampling methodology because it extrapolated from a sample of account numbers to determine the loss amount, a method this Court has never formally accepted.  He also says that even if the extrapolation was permissible, the government's methodology was flawed because it used an overall response rate of valid accounts instead of accounts that had reported fraudulent activity.

We review the district court's determination of loss for clear error, and its interpretation of the sentencing guidelines de novo. United States v. Barrington, 648 F.3d 1178, 1197 (11th Cir. 2011). The district court need only make a reasonable estimate of the loss, but it may not speculate about the existence of a fact. Id. "The government must support its loss calculation with reliable and specific evidence." Id. (quotation omitted).

First, statistical sampling was a reasonable method for estimating the total amount of loss in this case. Although we are not aware that any court has ever evaluated whether statistical sampling and extrapolating is a reasonable methodology in the context of § 2B1.1, we have approved it (in an unpublished case) in another context, as have several of our sister circuits. United States v. Rosin, 263 F. App'x 16, 28–29 (11th Cir. 2008) (per curiam); United States v. Ukwu, 546 F. App'x 305, 310 (4th Cir. 2013) (per curiam); United States v. Murray, 468 F. App'x 104, 110 (3d Cir. 2012); United States v. Bryant, 128 F.3d 74, 76 (2d Cir. 1997) (per curiam). In a case like this, with 97,922 account numbers, issuing subpoenas for each account would have been quite burdensome and costly to the government. The record reflects that the government also provided extensive testimony about its methodology and rigorous confidence intervals. The Guidelines impose a minimum loss amount of $500 per account when credit card fraud is involved, and the government applied this minimum to

5

each extrapolated account.  See USSG § 2B1.1 cmt. n.3(F)(i).  Under these circumstances, the district court did not clearly err in finding the government supported its loss estimate with reliable and specific evidence.

Second, Black was held responsible for the correct number of accounts under the Guidelines.  Section 2B1.1 cmt. n.3(A) says that a defendant is responsible for "the greater of actual loss or intended loss."  "Intended loss" means the "pecuniary harm that was intended to result from the offense [and] includes intended pecuniary harm that would have been impossible or unlikely to occur."  USSG § 2B1.1 cmt. n.3(A).  Black argues he should only be held responsible for accounts that had fraudulent activity on them.  But that would result in only the actual loss, not intended loss.  And in any event, the district court found that although Black had been caught before he could use all of the valid account numbers, he had intended to use them.  And the district court's finding of loss under § 2B1.1 is "entitled to appropriate deference."  United States v. Willis, 560 F.3d 1246, 1251 (11th Cir. 2009) (per curiam) (quotation omitted).  The district court did not clearly err by applying the 22-level enhancement.

### III.

Next, Black argues the district court erred by holding him responsible for more than fifty victims.  The Guidelines provide for a 4-level enhancement when the offense involved 50 or more, but less than 250, victims.  USSG

6

§ 2B1.1(b)(2)(B).  In cases involving a means of identification, a "victim" is defined as including "any person who sustained any part of the actual loss," or "any individual whose means of identification was used unlawfully or without authority."  U.S.S.G. § 2B1.1 cmt. nn.1, 4(E).  This Court's precedent provides that account numbers and credit cards are means of identification.  United States v. Auguste, 392 F.3d 1266, 1267–68 (11th Cir. 2004).

We review the district court's findings about the number of victims for clear error.  United States v. Ford, 784 F.3d 1386, 1396 (11th Cir. 2015).  The government must provide sufficient and reliable evidence to prove the number of victims by a preponderance of the evidence.  United States v. Washington, 714 F.3d 1358, 1361 (11th Cir. 2013).

Black says he should have been held accountable for only the 17 victims whose information was actually used to make purchases instead of the 133 victims whose information was found on physically printed counterfeit cards.  He points to United States v. Hall, 704 F.3d 1317 (11th Cir. 2013), to support this claim.  In Hall, the defendant collected the personal information of 141 patients while working in a doctor's office, and provided this information to her co-conspirators.  Id. at 1319.  They in turn used at least 12 of these patients' personal information to create fraudulent credit card accounts.  Id.  Hall pleaded guilty to charges including conspiracy to commit identity theft and access device fraud.  Id. at 1318–19.  In

7

calculating Black's sentence, the district court applied the same 4-level enhancement for 50 or more victims that was applied to Hall because she intentionally transferred the information of 141 patients. Id. at 1319. However, this Court reversed Hall's enhancement, holding that the 4-level enhancement was not appropriate because "the mere transfer of unauthorized identifying information is not the equivalent to the actual use of the identifying information for a fraudulent purpose." Id. at 1323. The Hall panel reasoned that just transferring the patients' information, without more, "did not employ that information for the purpose of which the conspiracy was intended—the procurement of fraudulent credit cards and cash advances. The personal identifying information was not used, as that term is ordinarily understood, until Hall's co-conspirators secured the fraudulent credit cards." Id. at 1322.

Because Black's conduct was different from that evaluated in Hall, the district court did not clearly err in imposing the 4-level enhancement. Black used the personal information of at least 133 people to imprint and procure fraudulent credit cards in their names. This is enough to have "used" their information under the Guidelines. See id. at 1322–23. Once a fraudulent credit card is made, the person whose information is unlawfully used becomes a victim for the purposes of § 2B1.1(b)(2)—it need not have actually been used. See id.; see also United States v. Lopez, 549 F. App'x 909, 912 (11th Cir. 2013) (per curiam) ("[T]hose

individuals whose information was used to make a fraudulent credit card or to make purchases constituted victims.").

## IV.

Finally, Black argues the district court erred by finding he possessed two firearms in connection with the offense.  USSG § 2B1.1(b)(15)(B) imposes a 2-level enhancement if the defendant possessed a dangerous weapon, including a firearm, in connection with the offense.  USSG. § 2B1.1(b)(15)(B).  We review a district court's factual findings on disputed sentencing issues for clear error. United States v. Matos-Rodriguez, 188 F.3d 1300, 1309 (11th Cir. 1999).

Black says the government showed only that the firearms were found in the basement of his residence and that his photo was above the desk on which one firearm was found.  He also says the district court never made a factual finding that he actually possessed the firearms.

The record does not support Black's claims.  First, the district court did make a factual finding, saying: "[W]hen I look at the guns in a locked, padlocked room sitting on the desk where these transactions were taking place, it's sort of hard to argue that they weren't associated with that business and so I find that that assessment is appropriate."  Second, this Court has said that "[a] defendant's possession of a firearm can be shown by demonstrating he actually possessed the firearm or that he constructively possessed it, which means he had ownership,

9

dominion, or control over an object itself or control over the premises in which the object [was] concealed." United States v. Villarreal, 613 F.3d 1344, 1359 (11th Cir. 2010) (quotation omitted). Black pleaded guilty to possessing the access devices and equipment found in the locked basement room, and also testified at sentencing that Johnson "hadn't known" and "wasn't involved with the activities that were going on in that room." Based on this record, the district court did not clearly err in finding that Black constructively possessed the premises where the guns were found. See id.

**AFFIRMED.**