[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

————————————————

No. 16-16208
Non-Argument Calendar

————————————————

D.C. Docket No. 0:16-cr-60009-RLR-2

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

CARLO MICHELL,

Defendant-Appellant.

————————————————

Appeal from the United States District Court
for the Southern District of Florida

————————————————

(March 22, 2018)

Before TJOFLAT, MARTIN, and NEWSOM, Circuit Judges.

PER CURIAM:

Carlo Michell appeals his 57-month sentence imposed after he pled guilty to conspiracy to commit access device fraud.  He argues that the district court erred when it applied a two-level sentencing enhancement for an offense involving ten or more victims, applied a four-level enhancement based on his role as an organizer or leader in the offense, applied a two-level enhancement for an offense involving the trafficking of unauthorized access devices, and attributed the entire loss amount of the conspiracy to him.

I

On September 26, 2017, Michell pled guilty to one count of conspiring to commit access device fraud, in violation of 18 U.S.C. § 1029(b)(2).  The indictment charged Michell and two other co-defendants with using customer identification information to fraudulently obtain wireless devices from AT&T Wireless.  AT&T offers insurance that provides for a replacement wireless device if a customer's phone is lost, stolen, or damaged.  To get the replacement device, the customer pays a deductible and provides a personal identification number ("PIN").

Michell and his co-conspirators got customer information from Teleperformance USA Corp., a contractor that provides customer service for AT&T.  Five employees at Teleperformance accessed the personal account information of 3,700 AT&T customers—including the customers' names,

2

telephone numbers, and PINs—and sold that information to Michell and his co-conspirators. Using this information, the conspirators made false claims to AT&T for replacement wireless devices. Michell used his Facebook page to coordinate the receipt of the fraudulently obtained wireless devices by other co-conspirators. In total, approximately 3,800 wireless devices were shipped to Michell and his co-conspirators.

The presentence investigation report ("PSR") sets out that Michell recruited at least five people to receive shipments of wireless devices, and instructed them to send the wireless devices to him or a co-conspirator. After recruiting them to the conspiracy, he also asked two of them if they "wanted to come work for him instead" of another conspirator.

Michell objected to certain portions of the PSR, including the attribution of the total loss amount of the conspiracy to him as well as a sentencing enhancement based on the number of victims. The government also objected to the PSR, arguing that Michell should receive sentencing enhancements for trafficking in unauthorized access devices and for his role in the offense. The district court sustained the government's objections, overruled Michell's objections, and sentenced him to 57 months in prison. This appeal followed.

II

Michell argues the district court should not have applied a two-level enhancement under Guidelines § 2B1.1 because the only victim was AT&T. See United States Sentencing Guidelines § 2B1.1(b)(2)(A)(i). We review de novo the interpretation and application of the sentencing guidelines, "and review[] underlying factual findings, including the District Court's calculation of the number of victims, for clear error." United States v. Rodriguez, 732 F.3d 1299, 1305 (11th Cir. 2013). Language in the guidelines is given "its plain and ordinary meaning." United States v. Fulford, 662 F.3d 1174, 1177 (11th Cir. 2011) (quotation omitted). Ordinarily, the guidelines commentary is authoritative, "unless it violates the Constitution or a federal statute, or is inconsistent with, or a plainly erroneous reading of, that guideline." Id. (quotation omitted).

The commentary to § 2B1.1 defines a "victim" as "any person who sustained any part of the actual loss" as a result of the offense. USSG § 2B1.1 cmt. n.1. In cases involving means of identification, a victim is further defined as "any individual whose means of identification was used unlawfully or without authority." USSG § 2B1.1 cmt. n.4(E).

Here, the names and PINs of the AT&T customers are means of identification,[1] and they were used without authorization.  The record also supports a finding that the information of more than ten AT&T customers was stolen because Michell admitted Teleperformance employees accessed 3,700 customer accounts, and admitted 3,800 wireless devices were ultimately obtained as a result of the conspiracy.

Michell argues he did not directly steal the identifying information, but merely bought it second-hand.  However, the enhancement applies when a defendant uses the means of identification, and Michell does not dispute that he used the names and PINs to fraudulently obtain wireless devices.  See United States v. Hall, 704 F.3d 1317, 1323 (11th Cir. 2013) (distinguishing between the "mere transfer of unauthorized identifying information" and "the actual use of the identifying information for a fraudulent purpose" when applying USSG § 2B1.1(b)(2)).  Beyond that, Michell pled guilty to a conspiracy offense, meaning his sentence can be enhanced based on the reasonably foreseeable acts of co-conspirators taken in furtherance of the conspiracy.  USSG § 1B1.3(a)(1)(B); see also United States v. Sammour, 816 F.3d 1328, 1340 (11th Cir. 2016) (holding USSG § 2B1.1(b)(2) enhancement applicable because defendant's "cohorts

---

[1] See USSG § 2B1.1 cmt. n.1 ("'Means of identification' has the meaning given that term in 18 U.S.C. § 1028(d)(7) . . . ."); 18 U.S.C. § 1028(d)(7) ("[T]he term 'means of identification' means any name or number that may be used, alone in in conjunction with any other information, to identify a specific individual.").

5

indisputably used the identifications" to fraudulently obtain Treasury checks);

Hall, 704 F.3d at 1323 (indicating the USSG § 2B1.1(b)(2)(A) enhancement would

be appropriate when co-conspirators fraudulently used victims' identification

information).  Michell and his co-conspirators used thousands of customers'

information to fraudulently obtain wireless devices, which was the clear purpose of

the conspiracy.  Therefore the district court properly applied the enhancement for

an offense involving ten or more victims.

### III

Michell next objects to the application of a four-level enhancement based on

his role as an organizer or leader in the offense.  We review a district court's

determination of a defendant's role in an offense for clear error.  United States v.

Jennings, 599 F.3d 1241, 1253 (11th Cir. 2010).  A district court may increase a

defendant's offense level by four where the defendant "was an organizer or leader

of [] criminal activity that involved five or more participants or was otherwise

extensive."  USSG § 3B1.1(a).  The factors that sentencing courts consider when

determining a defendant's role in the offense include:

> (1) the exercise of decision making authority, (2) the nature of
> participation in the commission of the offense, (3) the recruitment
> of accomplices, (4) the claimed right to a larger share of the fruits
> of the crime, (5) the degree of participation in planning or
> organizing the offense, (6) the nature and scope of the illegal
> activity, and (7) the degree of control and authority exercised over
> others.

6

United States v. Gupta, 463 F.3d 1182, 1198 (11th Cir. 2006) (quoting USSG

§ 3B1.1 cmt. n.4). For the enhancement to apply, "the defendant must have been

the organizer, leader, manager, or supervisor of one or more other participants."

USSG § 3B1.1 cmt. n.2. However, a defendant need not be the "sole leader or

kingpin of the conspiracy" to be considered an organizer or leader under the

guidelines. United States v. Vallejo, 297 F.3d 1154, 1169 (11th Cir. 2002).

Michell admitted to paying Teleperformance employees for customer

information, which was emailed to him. He then used his Facebook page to

coordinate the receipt of the fraudulently obtained wireless devices by other co-

conspirators. The PSR also showed that Michell asked at least five people to get

involved in the conspiracy, and asked two of them if they "wanted to come work

for him instead" of another conspirator.[2] By receiving the stolen customer

information, recruiting accomplices, directing the shipment of wireless devices,

and managing a number of participants, Michell demonstrated a leadership role in

the conspiracy. Therefore the district court did not err when it applied the four-

level enhancement under Guidelines § 3B1.1(a).

IV

Michell objects to the application of a two-level enhancement for trafficking

unauthorized access devices. That enhancement is appropriate "[i]f the offense

---

[2] Michell did not object to these findings in the PSR.

7

involved . . . the production or trafficking of any [] unauthorized access device." USSG § 2B1.1(b)(11)(B)(i). An "access device" is "any card, plate, code, account number, electronic serial number, mobile identification number, personal identification number . . . or other means of account access that can be used . . . to obtain money, goods, services, or any other thing of value."[3] 18 U.S.C. § 1029(e)(1). In a conspiracy, specific offense characteristics shall be determined based on all reasonably foreseeable acts and omissions of co-conspirators that were within the scope of the jointly undertaken criminal activity and in furtherance of that activity. USSG § 1B1.3(a)(1)(B).

This Court has not directly addressed whether the trafficking enhancement in § 2B1.1 applies when a defendant is convicted of a conspiracy offense but no substantive counts. In United States v. Charles, 757 F.3d 1222 (11th Cir. 2014), however, this Court applied § 2B1.1 to offenses involving fraud or deceit, including conspiracy to use unauthorized access devices. Id. at 1226. The Charles court said § 2B1.6 prohibited applying the enhancement for trafficking access devices to Charles's conspiracy offense, because he had also received a two-year consecutive sentence for aggravated identity theft based on the same conduct. Id. at 1226–27.

---

[3] See USSG § 2B1.1 cmt. n.10(A) ("'Unauthorized access device' has the meaning given that term in 18 U.S.C. § 1029(e)(3)."); 18 U.S.C. § 1029(e)(3) ("[T]he term 'unauthorized access device' means any access device that is lost, stolen, expired, revoked, canceled, or obtained with intent to defraud."); id. § 1029(e)(1) (defining "access device").

Based on the plain language of the guidelines and this Court's <u>Charles</u> opinion, we apply the two-level enhancement under § 2B1.1(b)(11)(B) to an offense of conspiracy involving the trafficking of unauthorized access devices, unless it is otherwise precluded. Here, Michell admitted to purchasing stolen customer information—including names, telephone numbers, and PINs—and using that information to file false insurance claims in order to receive replacement wireless devices. While the commentary to § 2B1.1 does not define "trafficking," most accepted definitions of that term would include the purchase of a stolen access device from a co-conspirator. <u>See</u> 18 U.S.C. 1029(e)(5) ("[T]he term 'traffic' means transfer, or otherwise dispose of, to another, or obtain control of with intent to transfer or dispose of."); <u>Charles</u>, 757 F.3d at 1226 (discussing applicability of § 2B1.1(b)(11)(B) for defendant who transferred stolen credit card to co-conspirator); <u>see also</u> <u>United States v. Doss</u>, 741 F.3d 763, 767–68 (7th Cir. 2013) (applying § 2B1.1(b)(11)(B) to defendant who "transferred information to those working for him so that they could obtain credit cards to purchase goods"). Because Michell's offense involved the trafficking of unauthorized access devices, we conclude the district court properly applied the enhancement.

V

Michell's final objection is to the loss amount attributed to him at sentencing. We review a district court's determination of a loss amount for clear

9

error.  United States v. Baldwin, 774 F.3d 711, 727 (11th Cir. 2014).  The district court is not required to make a precise determination of the loss, and only needs to make a reasonable estimate based on available information.  Id.  When determining a loss amount, a "defendant may be held responsible for the reasonably foreseeable acts of his co-conspirators in the furtherance of the conspiracy."  Id.

This record showed that Michell agreed to fully participate in the offense, and the district court found the actions of his co-conspirators were reasonably foreseeable.  Specifically, the district court found Michell was deeply involved with the conspiracy because he personally obtained stolen customer information, filed false insurance claims, and used his Facebook page to coordinate the activities of the conspiracy.  In addition to his own actions, the district court found Michell maintained frequent contact with other co-conspirators, including 820 phone calls between Michell and his cousin Kennol Placil.  Michell has not shown any reason why these findings were erroneous.  To the contrary, the findings were supported by the record, so the district court did not err when it determined that the entire loss amount was attributable to Michell.

**AFFIRMED.**