[DO NOT PUBLISH]

In the

# United States Court of Appeals

### For the Eleventh Circuit

————————————————

No. 21-13717

Non-Argument Calendar

————————————————

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

*versus*

KAREN MUNROE,

Defendant-Appellant.

————————————————

Appeal from the United States District Court
for the Southern District of Florida
D.C. Docket No. 0:19-cr-60311-JIC-2

————————————————

Before NEWSOM, GRANT, and BRASHER, Circuit Judges.

PER CURIAM:

Karen Munroe conspired with Chukwuemeka Chinye to commit financial fraud. She helped Chinye procure a counterfeit Florida driver's license and withdrew a couple thousand dollars with a debit card issued in someone else's name. The government indicted Munroe, and the jury convicted her on four criminal counts, including conspiracy to commit access device fraud. The district court sentenced her to forty-five months' imprisonment, imposing enhancements because the offense involved (1) sophisticated means and (2) ten or more victims. On appeal, Munroe argues that the district court clearly erred in applying these two enhancements. After reviewing the record, we are not left with a definite and firm conviction that the district court erred in applying the sophisticated-means enhancement. But the government declines to defend the district court's factfinding on the number of victims, instead asking us to find that Munroe's offense involved different victims that also number ten or more. We cannot make such a factfinding. Accordingly, we affirm in part and remand in part.

## I.

We begin by rehearsing the relevant facts of this case, which arose when Munroe and Chinye conspired to steal money from unsuspecting victims. Their elaborate scheme transpired between

May 2018 and January 2019 and involved creating fraudulent bank accounts, changing victims' mailing addresses, rerouting check payments, and "washing" checks. Munroe was instrumental in helping Chinye acquire a counterfeit Florida driver's license. The license contained identifying information Chinye used to open bank accounts that housed the pair's ill-gotten gains. On one occasion, Munroe texted Chinye information listed on an illegally obtained credit card that was in her possession. On another, the pair diverted a $20,000-check and deposited it into one of the fraudulent accounts. Munroe then made several ATM withdrawals from the account using a debit card issued in the victim's name.

The government indicted Munroe for (1) conspiracy to commit access device fraud under 18 U.S.C. § 1029(b)(2); (2) producing, using, and trafficking in counterfeit access devices under 18 U.S.C. § 1029(a)(1); (3) use of unauthorized access devices under 18 U.S.C. § 1029(a)(2); and (4) aggravated identity theft under 18 U.S.C. § 1028A(a)(1). A jury convicted her on all counts.

Central to this appeal, the district court imposed two enhancements at sentencing over Munroe's objection: one under U.S.S.G. § 2B1.1(b)(10)(C) because the offense utilized sophisticated means; another under U.S.S.G. § 2B1.1(b)(2)(A)(i) because the offense involved ten or more victims. The district court then sentenced Munroe to forty-five months' imprisonment. She timely appealed.

## II.

We review the district court's decision to impose a sophisticated-means enhancement for clear error. *United States v. Presendieu*, 880 F.3d 1228, 1248–49 (11th Cir. 2018). The clear-error standard is highly deferential to the district court's findings—if we are not "left with a definite and firm conviction that a mistake has been committed," we affirm the sentence. *United States v. Sosa*, 777 F.3d 1279, 1300 (11th Cir. 2015) (quotations omitted).

We also review the "district court's finding of the number of victims for clear error." *United States v. Baldwin*, 774 F.3d 711, 735 (11th Cir. 2014). Yet, because the "district court's determination that a person or entity was a victim for purposes of loss calculation" requires interpretation of the Guidelines, we review that finding *de novo*. *United States v. Stein*, 964 F.3d 1313, 1319 (11th Cir. 2020).

When a defendant challenges the factual basis for an enhancement, the government must prove the disputed fact by a preponderance of the evidence—the proposition must be "more likely true than not true." *United States v. Philador*, 717 F.3d 883, 885 (11th Cir. 2013); *United States v. Watkins*, 10 F.4th 1179, 1185 (11th Cir. 2021) (quotation omitted). And we can affirm "for any reason supported by the record," even if the district court did not expressly rely upon it. *Williams v. Bd. of Regents of Univ. Sys. of Ga.*, 477 F.3d 1282, 1294 (11th Cir. 2007).

## III.

On appeal, Munroe advances two principal arguments to challenge her sentence. First, she posits that that the district court clearly erred in applying a sophisticated-means enhancement because she did not "mastermind[] a complex scheme." Second, she contends that her conduct did not cause the companies identified as "victims" by the district court to sustain actual losses—the district court erred in imposing an enhancement on that basis too. We take up each issue in turn.

### A.    Sophisticated Means

Munroe's first challenge boils down to the claim that her individual conduct did not amount to sophisticated means. She therefore argues that the district court clearly erred by imposing a two-point sophisticated-means enhancement. We disagree.

The Guidelines recommend a two-point enhancement when (1) the offense "involved sophisticated means" and (2) "the defendant intentionally engaged in or caused the conduct constituting sophisticated means." U.S.S.G. § 2B1.1(b)(10)(C). "Sophisticated means" denote "especially complex or especially intricate offense conduct" related to "the execution or concealment of an offense." *Id.* § 2B1.1 n.9. The district court need not conclude that *every* aspect of the offense is sophisticated to apply the enhancement. *See United States v. Wheeler*, 16 F.4th 805, 830 (11th Cir. 2021). Yet, the district court should not apply a sophisticated-means enhancement without a determination that "the defendant's own

conduct was sophisticated." *Presendieu*, 880 F.3d at 1248 (quotations omitted). Unlawfully procuring checks payable to others and acquiring fraudulent identification constitute sophisticated means. *Id.* Moreover, spreading out illegal activities over an extended timeframe points to a scheme's sophistication. *See United States v. Feaster*, 798 F.3d 1374, 1381 (11th Cir. 2015).

Here, the scheme that Munroe and Chinye devised, which entailed changing victims' mailing addresses, "washing" checks, and opening fraudulent bank accounts, falls squarely within the definitional scope of "sophisticated means" under the Guidelines. Nor does Munroe dispute the totality of the sophistication on appeal.

Instead, she claims that she did not intentionally engage in or cause the sophisticated conduct. But this argument fails to persuade. First, Munroe helped Chinye acquire a counterfeit Florida driver's license. She even communicated with a co-conspirator to ensure that the fake license would display proper markings under black light and be scannable. Second, Munroe made several ATM withdrawals from an account that held funds from an illegally diverted $20,000-check. Third, Munroe forwarded Chinye information from a fraudulently obtained credit card.

Casting Munroe as an innocent bystander to Chinye's artifice does not comport with the record. Acquiring false identification, as Munroe did, constitutes sophisticated means under the Guidelines. *See Presendieu*, 880 F.3d at 1248. Munroe also engaged

in her criminal activities over the course of several months, a tell-tale sign of sophistication. *See Feaster*, 798 F.3d at 1381.

Munroe was involved in a sophisticated criminal scheme with Chinye, and the record suggests that she intentionally engaged in and caused the sophisticated conduct. Accordingly, the district court did not clearly err by imposing this enhancement.

### B.　Ten or More Victims

Munroe next contends that the district court improperly enhanced her sentence by two points for an offense involving ten or more victims.

The Guidelines advise imposing a two-point enhancement when the offense "involved 10 or more victims." U.S.S.G. § 2B1.1(b)(2)(A)(i). A "victim" includes "any person who sustained any part of the actual loss," namely, any "reasonably foreseeable pecuniary harm" resulting from the offense, or "any individual whose means of identification was used unlawfully or without authority." *Id.* § 2B1.1 nn.1, 3(A)(i), 4(E). When calculating the offense level in a case involving "jointly undertaken criminal activity," the district court can consider "*all* acts and omissions" within the conspiracy's scope that furthered the criminal activity and were "reasonably foreseeable." *Id.* § 1B1.3(a) (emphasis added). Individuals whose identifying information was used to obtain fraudulent credit cards are "victims" under Section 2B1.1. *See United States v. Hall*, 704 F.3d 1317, 1321 (11th Cir. 2013). Yet, counting an individual as a "victim" under Section 2B1.1 "regardless of whether that

individual's information was ever fraudulently 'used'" amounts to plain error. *United States v. Corbett*, 921 F.3d 1032, 1040 (11th Cir. 2019).

Here, Munroe argues that her conduct harmed only two victims: (1) a man from whom she and Chinye diverted the $20,000-check and (2) a woman whose personal information was used to obtain a fraudulent credit card. Conversely, the district court found that Munroe's and Chinye's joint criminal activity harmed eleven other victims, including several financial institutions.

On appeal, the government concedes that "it is unclear" whether these financial institutions qualify as "victims" under the Guidelines. Instead, it points to evidence adduced at trial that Chinye possessed twelve credit cards belonging to other people at the time of his arrest. Munroe aptly observes that neither the Presentence Investigation Report nor the government's Sentencing Memorandum mentioned these twelve additional victims.

The district court found that the banks listed in the government's Sentencing Memorandum were victims and based the enhancement solely on that ground. The government now refuses to defend that position and for good reason—the record does not reflect that some of the banks sustained an actual loss that would qualify them as victims. *See* U.S.S.G. § 2B1.1; *see also United States v. Corbett*, 921 F.3d 1032, 1040 (11th Cir. 2019) (concluding that the district court plainly erred "when it counted every individual whose information was illegally downloaded as a 'victim,'

regardless of whether that individual's information was ever fraudulently 'used' for any purpose to which it was adapted").

Instead of addressing Munroe's argument, the government advances an alternate theory for why her offense involved ten or more victims, positing that the people whose names were printed on the twelve credit cards found on Chinye during his arrest are "victims" under Section 2B1.1. According to the government, Chinye illegally acquired the credit cards, and Munroe jointly participated in Chinye's fraud, so "[t]hose victims are part of Munroe's relevant conduct."

We need not probe the soundness of that argument because the government did not make it to the district court. Nor did the credit cards in Chinye's possession serve as the basis for the district court's factfinding on this sentencing enhancement. Though we can affirm the district court "for any reason supported by the record," *Williams*, 477 F.3d at 1294, we cannot "substitute ourselves for the district court as factfinder." *United States v. Fulford*, 662 F.3d 1174, 1181 (11th Cir. 2011). We cannot find new victims that the district court never considered. We therefore remand for resentencing on this issue.

## IV.

Accordingly, we remand for resentencing on the number of victims but affirm in all other respects.

**AFFIRMED IN PART; REMANDED IN PART**.