# United States Court of Appeals
## For the First Circuit

Nos. 16-1682, 16-1703

UNITED STATES OF AMERICA,

Appellee,

v.

R. DAVID COHEN,

Defendant, Appellant.

APPEALS FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Leo T. Sorokin, U.S. District Judge]

Before

Lynch, Stahl, and Barron,
Circuit Judges.

James B. Kransoo, with whom Krasnoo, Klehm & Falkner LLP was on brief, for appellant.
Ryan M. DiSantis, Assistant United States Attorney, with whom William D. Weinreb, Acting United States Attorney, was on brief, for appellee.

April 6, 2018

BARRON, **Circuit Judge**.  R. David Cohen ("Cohen") appeals his convictions for one count of conspiracy to convert government property, in violation of 18 U.S.C. § 371; fourteen counts of conversion of government property, in violation of 18 U.S.C. § 641; and one count of conspiracy to commit money laundering, in violation of 18 U.S.C. § 1956(h).  He also challenges his sentence.  The convictions stem from his role in using bank accounts that he owned or controlled in order to negotiate fraudulently-obtained federal tax refund checks.  We affirm the convictions and the sentence.

**I.**

Cohen and his co-conspirators, both indicted and unindicted, were alleged to have engaged in a scheme in Massachusetts that, beginning in October 2011 and continuing through December 2014, involved the use of stolen identities to obtain fraudulent tax refunds from the United States Internal Revenue Service ("IRS").  The alleged scheme worked as follows.

The conspirators (though not Cohen) obtained tax refund checks by using stolen identities.  Cohen, who was a real estate attorney in Massachusetts, deposited the refund checks into his existing Interest on Lawyers' Trust Accounts ("IOLTA")[1] bank

_____

[1] As explained in the trial testimony of the executive director of the IOLTA Committee of the Massachusetts Supreme Judicial Court, an IOLTA account is a "pooled, interest bearing

- 2 -

account, subsequently-opened IOLTA accounts, and conventional business accounts (opened by himself or by a co-conspirator) at various banks. Cohen and his co-conspirators then wrote checks from those accounts that were cashed, made cash withdrawals from those accounts, and engaged in other transactions in order to launder the tax refunds. When questioned by various bank officials about the deposits being made to the various IOLTA and business accounts, Cohen often stated that he was depositing checks in these accounts for clients who were involved in real estate closing transactions for which he was their attorney.

About a year and a half into the alleged scheme, on or about May 22, 2013, Cohen entered into an agreement with the Massachusetts Attorney General's Office (the "AG Settlement") to settle a lawsuit alleging that Cohen provided his advice for, and consent to, unlawful conduct by a client whom Cohen represented. In the AG Settlement, Cohen agreed to pay a $40,000 fine and not to conduct real estate closings for a period of six months. The government alleges that, after entering into the AG Settlement, Cohen stopped using his IOLTA accounts to launder the fraudulently-

account" that a Massachusetts attorney uses to hold "client funds" and keep that money "separate from the attorney's operating or . . . business account." As the witness explained, Massachusetts Rule of Professional Conduct 1.15, promulgated by the Massachusetts Supreme Judicial Court for attorneys admitted to the bar in Massachusetts, requires Massachusetts attorneys to "keep[] client funds separate from attorney's [operating or business] funds."

- 3 -

obtained checks, at which time the conspiracy switched to using conventional business bank accounts for such activities.

At trial, Cohen testified in his own defense. He asserted that he was not a "crook," but a "fool" who "was do[ing] favors for people who he knows, who are friends," and that he failed to look closely at documents or ask enough questions. After a ten-day trial, however, the jury convicted him of each of the sixteen counts that were given to the jury.

At sentencing, Cohen disputed the sentencing range that the Pre-sentence Report ("PSR") set forth under the United States Sentencing Guidelines (the "Sentencing Guidelines"). Cohen contended that the PSR wrongly calculated that range by attributing too large a loss from the conspiracy to him and, therefore, by applying too large an enhancement to his base offense level, see U.S.S.G. § 2B1.1(b)(1)(I) (2015); by wrongly applying to his base offense level the enhancement that applies for an offense that involves ten or more victims, see id. § 2B1.1(b)(2)(A)(i); and by wrongly applying to his base offense level the enhancement that applies for obstruction of justice, see id. § 3C1.1. Cohen argued that, without these wrongly applied enhancements, he should have been assigned a total offense level of twenty-two, which, given his criminal history, would appear to have resulted in a sentencing range of forty-one to fifty-one months imprisonment under the Sentencing Guidelines.

The District Court disagreed, applied the enhancements, and calculated Cohen's total offense level to be twenty-eight, which corresponded to a recommended guideline sentencing range of seventy-eight to ninety-seven months imprisonment. However, after considering the sentencing factors set forth in 18 U.S.C. § 3553, the District Court found the guideline range to be "too high" and sentenced Cohen to a below-guideline term of imprisonment of fifty-four months.[2]

Cohen now appeals both his convictions and his sentence.

## II.

We start with Cohen's challenge to his convictions. He argues first that they must be vacated because the District Court erred in "permit[ting the AG Settlement]" to be used at trial. He also argues that the convictions must be vacated because the District Court erred in allowing an expert witness for the government to testify regarding the Massachusetts "rules about IOLTA accounts" for attorneys. We find neither argument persuasive.

## A.

The facts that bear on Cohen's challenge regarding the AG Settlement are as follows. Prior to trial, the government

---

[2] The District Court also sentenced Cohen to thirty-six months of supervised release upon the completion of his term of imprisonment.

informed Cohen and the District Court that if Cohen presented any character witnesses to testify to his reputation for truthfulness and honesty, the government intended to cross-examine those witnesses about the AG Settlement. During trial, but prior to the close of the government's case, the government also made clear that if Cohen decided to testify in his own defense, the government would cross-examine Cohen about the AG Settlement pursuant to Federal Rule of Evidence 608(b).[3]

In light of the government's stated intentions, Cohen requested the District Court "rule . . . in advance of [Cohen's] testimony, to exclude completely any cross-examination of him arising out of the [AG Settlement]." United States v. Cohen, No. 1:15-cr-10008-LTS (D. Mass. Jan. 17, 2016). Cohen's counsel told the District Court that he had been under the impression that evidence concerning the AG Settlement "wasn't going to see the light of day, if [his] reputation evidence wasn't going to come [in]." He explained, however, that if evidence of the AG Settlement would be used to cross-examine Cohen, then Cohen "might

---

[3] Federal Rule of Evidence 608(b) states, in relevant part, that though "extrinsic evidence is not admissible to prove specific instances of a witness's conduct in order to attack or support the witness's character for truthfulness . . . the court may, on cross-examination, allow them to be inquired into if they are probative of the character for truthfulness or untruthfulness of: (1) the witness; or (2) another witness whose character the witness being cross-examined has testified about."

as well" introduce "a fair number of reputation witnesses" "because [he was] foiled."

After hearing argument by both parties, the District Court, in a January 17, 2016 order, ruled as follows:

> This request is DENIED without prejudice to the defendant challenging specific questions posed by the government on cross-examination. The Court notes that permissible cross-examination of the defendant and permissible cross-examination of possible defense character witnesses is not identical. For example, as to the latter the government may challenge the basis for the witness'[s] opinion or reputation testimony regarding the defendant's character. Thus, while asking the character witness whether he or she is aware of the fact of the lawsuit may well be a permissible challenge to the basis of the witness'[s] testimony that same question of the defendant, at least standing alone, does not appear to bear on truthfulness or untruthfulness.

The parties then informed the District Court that they had "reached an agreement." If Cohen testified and the government chose to cross-examine him about the AG Settlement, the government agreed that it would only ask Cohen "of the date of the [AG Settlement], when [Cohen] agreed with the Attorney General's [O]ffice not to engage in real estate transactions for six months." In return, Cohen agreed that he would not "present[] any reputation evidence witness[es] at all." At trial, the government limited its cross-examination to the agreed-upon scope and, thereafter, Cohen did not call any character witnesses.

On appeal, Cohen now characterizes the District Court's conditional order as "permitting the [g]overnment to use . . . prejudicial, irrelevant evidence to impeach Cohen's [potential] witnesses who would have testified to Cohen's reputation for truthfulness and honesty." He also contends that the "repeated references to the [AG Settlement] during cross-examination of Cohen's [potential] reputation-evidence witnesses, . . . would have been so prejudicial to [Cohen's] defense . . . Cohen was forced to eliminate [the reputation witness] portion of his defense." He argues that the District Court therefore abused its discretion and, in doing so, violated his Sixth Amendment right to present his defense.

As an initial matter, Cohen's characterization of the ruling as "permitting" the use of the AG Settlement is mistaken. The District Court never ruled that the AG Settlement could be used during cross-examination. The District Court merely ruled that it would rule on a question-by-question basis whether questions regarding the AG Settlement would be permitted during cross-examination.

In addition, in now arguing that he was prejudiced by the conditional ruling because he was deterred from putting on character witnesses, Cohen makes a prejudice argument that appears to be inconsistent with the representation that he made to the District Court. Prior to the conditional ruling Cohen informed

- 8 -

the District Court that if it did permit Cohen to be cross-examined about the AG Settlement, then he likely would go ahead and put on his character witnesses because the AG Settlement would already have been referenced.

Even apart from these problems with Cohen's challenge to the conditional ruling, there is another. We have stated, based on Luce v. United States, 469 U.S. 38 (1984), that a party waives a challenge to a conditional ruling concerning how cross-examination of a witness may proceed, unless the objecting party actually calls the witness to the stand to "give the court a chance to perform the required balancing in the concrete context of actual question and answer." United States v. Mazza, 792 F.2d 1210, 1222-23 (1st Cir. 1986); see also United States v. Monell, 801 F.3d 34, 48 (1st Cir. 2015) (finding defendant waived his challenge that an evidentiary ruling violated his Sixth Amendment right to call a witness in his defense at trial where defendant did not call the witness).[4] As we have previously said, "it is too great a handicap to bind a trial judge to a ruling on a subtle evidentiary question

---

[4] Though Luce considered the balancing of probative value versus prejudicial effect with respect to Federal Rule of Evidence 609, we see no reason why the reasoning of Luce would not apply in the context of Rule 608(b), see United States v. Weichert, 783 F.2d 23, 25 (2d Cir. 1986), and Rule 403, see Monell, 801 F.3d at 48. Nor does Cohen argue otherwise.

. . . outside a precise factual context." <u>United States</u> v. <u>Griffin</u>, 818 F.2d 97, 104 (1st Cir. 1987).[5]

Because of the agreement that Cohen reached with the government, none of the character witnesses Cohen contends that he wanted to testify actually did and his own cross-examination concerning the AG Settlement was limited. Thus, it is unclear from the record before us what questions or testimony, if any, the jury would have been allowed to hear concerning the AG Settlement if Cohen's character witnesses had taken the stand, or if Cohen himself had been subject to a fuller cross-examination.

In fact, Cohen's counsel explained to the District Court in advance of the conditional ruling that a determination about whether the prosecution should be able to ask a question to a character witness about the AG Settlement "depend[ed] on what kind of question[s] [the government] want[ed] to put to the reputation evidence witness[es] on cross-examination." And, in the absence of the agreement, the government, based on the apparent strength of its case, "might have elected not to risk a reversible appellate

---

[5] "This does not mean, of course, that the evidence must always be revealed to the jury." <u>Griffin</u>, 818 F.2d at 105. "Counsel should cooperate with the district court in exercising restraint and in employing the prophylaxis of the sidebar, where appropriate," and "[i]n more complex situations, counsel may request that the jurors retire, or in exceptional cases, that the actual testimony be screened voir dire in the jury's absence." <u>Id.</u>

issue," Monell, 801 F.3d at 49, by deciding not to undertake such cross-examination at all.[6]

For these reasons, it is "difficult to evaluate the degree of unfair prejudice," id., if any, that flowed from the conditional ruling. Accordingly, it is impossible for us to conclude on this record that, merely by conditionally denying Cohen's motion concerning the AG Settlement, the District Court effectively precluded Cohen from mounting what he contends would have been an important part of his defense. This challenge to the convictions therefore fails.

**B.**

Cohen also argues that the District Court erred in permitting the government to introduce expert testimony at trial concerning the rules and regulations relating to Massachusetts IOLTA accounts. Cohen contends that the admission of this evidence violated Federal Rule of Evidence 702. That rule required the District Court to determine whether a "valid connection" existed "between the expert's testimony and a disputed issue." United

---

[6] Cohen makes no argument that the handful of cross-examination questions actually asked of him by the government affected his ability to call his character witnesses or otherwise prejudiced him. His failure to make any such argument is hardly surprising, as those questions were within the scope of the questions Cohen agreed could be asked of him on cross-examination.

- 11 -

States v. Mehanna, 735 F.3d 32, 66 (1st Cir. 2013) (quoting United States v. Shay, 57 F.3d 126, 133 n. 5 (1st Cir. 1995)).

Cohen argues that the expert testimony regarding Cohen's "improper, non-criminal use of his IOLTA accounts . . . did not assist the jury, . . . as that testimony tended to prove none of Cohen's crimes." Moreover, Cohen contends, the testimony served merely to "inflame the jury into thinking that [he wa]s unethical and therefore must be a bad man and a criminal . . . ."

We review preserved objections to "rulings relating to the admissibility of expert-witness testimony for clear abuses of discretion, and will not reverse unless the ruling at issue was predicated on an incorrect legal standard or we reach a definite and firm conviction that the court made a clear error of judgment." United States v. Kantengwa, 781 F.3d 545, 560 (1st Cir. 2015) (internal quotation marks omitted). The government argues that Cohen failed to preserve this objection and thus that we should review his challenge to the evidentiary ruling only for plain error. But, his challenge fails even under the more favorable abuse of discretion standard. See Kantengwa, 781 F.3d at 560.

The expert testimony at issue explained to the jury that the rules governing IOLTA accounts permit transactions involving third-party funds, and that such third-party transactions are typical for IOLTA accounts. That testimony assisted the jurors by informing them of features of the accounts that could have

- 12 -

facilitated Cohen's ability to negotiate and launder a much higher volume of tax refund checks by allowing him to conceal his activity for a period of time, and that could have provided support for Cohen's cover story that the payees were clients whose funds he was holding for future property investments. Evidence of the "IOLTA rules and regulations," coupled with Cohen's "disregard" of those rules and regulations, also could have been probative of Cohen's intent and therefore was of assistance to the jury.

Of course, evidence that is admissible under Federal Rule of Evidence 702 remains subject to Federal Rule of Evidence 403's balancing test. United States v. Tetioukhine, 725 F.3d 1, 6 (1st Cir. 2013). But, "[w]here (as here) a piece of evidence is determined to be relevant, the district court has wide discretion in steadying the Rule 403 seesaw." United States v. Pires, 642 F.3d 1, 12–13 (1st Cir. 2011) (quoting Onujiogu v. United States, 817 F.2d 3, 6 (1st Cir. 1987)). "Only rarely -- and in extraordinarily compelling circumstances -- will we, from the vista of a cold appellate record, reverse a district court's on-the-spot judgment concerning the relative weighing of probative value and unfair effect." Id. (quoting Freeman v. Package Mach. Co., 865 F.2d 1331, 1340 (1st Cir. 1988)). Because the District Court's decision to allow the admission of this expert testimony was "within the universe of reasonable decisions," we find no abuse of discretion. Id. at 13.

- 13 -

We turn, then, to Cohen's challenges to his sentence. Cohen contends that his sentence must be vacated because the District Court erred in imposing each of three sentencing enhancements in calculating his sentencing range under the Sentencing Guidelines. We do not agree.

We review preserved objections to a district court's interpretation of the Sentencing Guidelines de novo. United States v. Jones, 778 F.3d 375, 383 (1st Cir. 2015). We assess related factual findings for clear error. United States v. Codarcea, 505 F.3d 68, 71 (1st Cir. 2007). "Clear-error review is demanding: this standard will be satisfied only if, 'upon whole-record review, an inquiring court form[s] a strong, unyielding belief that a mistake has been made.'" United States v. Nuñez, 852 F.3d 141, 144 (1st Cir. 2017) (alteration in original) (quoting United States v. Cintrón–Echautegui, 604 F.3d 1, 6 (1st Cir. 2010)).

### A.

Cohen first argues that the District Court erred in applying a sixteen-level enhancement to his base offense level under U.S.S.G. § 2B1.1(b)(1)(I), which is the enhancement that applies only if the losses from a fraud that are attributable to the defendant total "[m]ore than $1,500,000." He contends that he should at most have been subject to the fourteen-level enhancement that applies for losses that are attributable to a defendant that

total more than $550,000, but less than $1,500,000.   See id.
§§ 2B1.1(b)(1)(H)-(I).

The District Court applied the sixteen-level enhancement because it found that the entire amount of loss attributed to Cohen in the PSR -- $1,672,958.74 -- was, in fact, attributable to Cohen.[7] The District Court based this finding on, in combination, the evidence introduced at trial, the evidence introduced through the testimony of a co-conspirator at the sentencing hearing, and a DVD of the co-conspirator's post-arrest interview that Cohen admitted into evidence at sentencing.

The co-conspirator testified at sentencing as follows. Shortly after Cohen entered into the AG Settlement, Cohen directed the co-conspirator to open new bank accounts so that the conspiracy could, and did, continue to cash the fraudulently-obtained tax refund checks.  In addition, Cohen received checks drawn on and cash drawn from these new accounts, told the co-conspirator that the tax refund checks being cashed "belonged to fictitious people," gave the co-conspirator tax refund checks to cash, and provided the co-conspirator with notarized forms and tax returns for payees

---

[7] The conduct outlined in the PSR was derived from a statement of facts submitted by the United States Attorney's Office ("USAO") in the instant case, a statement of facts submitted by the USAO in connection with a related case against a co-conspirator, a criminal complaint affidavit by an IRS agent involved in the investigation of the scheme which resulted in Cohen's conviction, Cohen's trial testimony, and a statement of the offense submitted to the Probation Office by Cohen.

on some of the fraudulently-obtained checks to provide to a bank when one bank asked questions about account activity.

Cohen first contends that the District Court erred in sentencing him on the basis of the conduct that the co-conspirator described, because Cohen had not pleaded guilty to it, nor had the government proved it beyond a reasonable doubt. But, as Cohen concedes, our precedent forecloses that argument. See United States v. Constant, 814 F.3d 570, 581 (1st Cir. 2016) (citing United States v. Leahy, 668 F.3d 18, 22 (1st Cir. 2012)).

Cohen next argues that the District Court erred by relying on the co-conspirator's testimony because Cohen was not provided "notice" "in advance of sentencing" that the co-conspirator would be testifying at the sentencing hearing. See United States v. Acevedo-López, 873 F.3d 330, 341 (1st Cir. 2017) (explaining that "[a] sentencing court must allow the parties' attorneys to comment on . . . matters relating to an appropriate sentence" (quoting Fed. R. Crim P. 32(i)(1)(C)), and that "a defendant's right to respond to the information offered against him at sentencing means very little without a right to notice of that information" (quoting United States v. Millán-Isaac, 749 F.3d 57, 70 (1st Cir. 2014))). But, even if Cohen had preserved his lack-of-notice argument before the District Court, it fails because Cohen has failed to explain how he was unduly prejudiced. See id. at 342 (finding harmless error where defendant failed to

show how "any harm or prejudice resulted" from the sentencing court's use, without notice, of certain documents at sentencing).

Cohen acknowledges that prior to the sentencing hearing he was aware that the PSR recommended applying the sixteen-level enhancement on the basis of statements by the co-conspirator regarding Cohen's post-AG Settlement period conduct. Additionally, just after the co-conspirator testified, the record shows that Cohen presented two rebuttal witness solely on the issue of the co-conspirator's English-speaking abilities, an issue that appeared to be central to Cohen's cross-examination of the co-conspirator. And Cohen identifies no other evidence that he would have introduced had he received more notice. Moreover, when Cohen argued below that the lack of notice left him unprepared to cross-examine the co-conspirator about certain account expenditures which "further tend[ed] to undermine [the co-conspirator's] testimony," Cohen had no reply to the District Court's response that the foreseeability of the results of the conspiracy (with respect to Cohen's role) and whether expenditures were particularly attributable to a specific co-conspirator were different questions. Thus, any error with respect to notice regarding the co-conspirator's testimony at sentencing was harmless. See id.

Cohen also argues that the District Court clearly erred in finding that the post-AG Settlement conduct about which the co-

- 17 -

conspirator testified was attributable to Cohen.  But, Cohen does not challenge the District Court's finding that the co-conspirator's testimony was credible.  And we have rejected Cohen's argument that he was not given proper notice that the co-conspirator would be testifying at sentencing.  Accordingly, this aspect of his challenge fails.

Finally, as the government contends, Cohen's passing assertion on appeal that the District Court "never considered . . . [Cohen's] financial resources, his financial needs and his earning ability and other appropriate factors" is undeveloped and is therefore waived.  United States v. Zannino, 895 F.2d 1, 17 (1st Cir. 1990).  We thus reject Cohen's arguments alleging error in the application of a sixteen-level enhancement to his base offense level pursuant to U.S.S.G. § 2B1.1(b)(1)(I).

**B.**

Cohen next argues that the District Court erred in applying the two-level sentencing enhancement for an offense involving ten or more victims, U.S.S.G. § 2B1.1(b)(2)(A).  Cohen does so because he contends that "only the Government, not the payees on erroneously issued [federal] tax refund checks, is a victim because . . . the payees, never having been entitled to these checks, suffered no financial hardship."

Cohen's argument rests in part on his apparent contention that the payees do not meet the definition of "victim"

- 18 -

laid out in U.S.S.G. § 2B1.1 Application Note 1.  That Application

Note defines a victim as: "(A) any person who sustained any part

of the actual loss determined under [U.S.S.G. § 2B1.1](b)(1); or

(B) any individual who sustained bodily injury as a result of the

offense."[8]  The District Court did not rely, however, on the

definition of "victim" in U.S.S.G. § 2B1.1 Application Note 1.

Rather, the District Court found the payees to be victims in light

of U.S.S.G. § 2B1.1 Application Note 4(E), which states:

> Cases Involving Means of Identification. For
> purposes of subsection (b)(2) [concerning
> multi-victim sentencing enhancements], in a
> case involving means of identification
> "victim" means (i) any victim as defined in
> Application Note 1; or (ii) any individual
> whose means of identification was used
> unlawfully or without authority.

With respect to Application Note 4(E), Cohen argues that

he "never 'used' means of identification" in the commission of his

offenses of conviction.  To support this contention, he relies on

our decision in United States v. Berroa, 856 F.3d 141 (1st Cir.),

cert. denied sub nom. Davila v. United States, 138 S. Ct. 488

(2017), where we construed the meaning of "use" in the context of

the federal aggravated identity theft statute, 18 U.S.C. § 1028A.

---

[8] In U.S.S.G. § 2B1.1(b)(1), "actual loss" is defined as "the reasonably foreseeable pecuniary harm that resulted from the offense."  U.S.S.G. § 2B1.1 cmt. n.3(A)(i).  And within that definition "pecuniary harm" is defined as "harm that is monetary or that otherwise is readily measurable in money," and "does not include emotional distress, harm to reputation, or other non-economic harm."  Id. § 2B1.1(b)(1) cmt. n.3(A)(iii).

But, even if we apply our precedent construing the term "use" in § 1028A to construe the term "used" in Application Note 4(E), his argument fails. Berroa determined that a defendant's conduct with respect to another's means of identification constituted a "use" of that means of identification so long as "the defendant attempt[ed] to pass him or herself off as another person or purport[ed] to take some other action on another person's behalf." 856 F.3d at 156 (emphasis added); see also United States v. Morel, Nos. 17-1331, 17-1332, 17-1353 (1st Cir. Mar. 16, 2018) (relying on Berroa to hold that a defendant "purported to act on [payee's] behalf" by depositing a fraudulently-obtained tax refund check bearing the payee's forged signature as an endorsement and that such an act constituted "use" of that payee's means of identification under 18 U.S.C. § 1028A)). And there is no dispute that Cohen, in depositing the fraudulently-obtained tax refund checks, was purporting to do so on behalf of the payees. Further, while § 1028A includes a mens rea requirement, see United States v. Godin, 534 F.3d 51 (1st Cir. 2008) (concluding that the scienter requirement in § 1028A extends to "of another person"), the record supports, and Cohen does not dispute, that he knew that the tax refund checks that he was depositing bore a means of identification

- 20 -

of another -- specifically the names of the payees.[9]  Accordingly, we affirm the District Court's application of the two-level enhancement under U.S.S.G. § 2B1.1.[10]

## C.

Finally, Cohen contends that the District Court erred by increasing his offense level under the Sentencing Guidelines by two levels pursuant to the obstruction-of-justice enhancement set forth in U.S.S.G. § 3C1.1.  The obstruction-of-justice enhancement applies "[i]f (1) the defendant willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice . . ., and (2) the obstructive conduct related to . . . the defendant's offense of conviction . . . ."  U.S.S.G. § 3C1.1; see United States v. Mercer, 834 F.3d 39, 48 (1st Cir. 2016).  The enhancement "is not intended to punish a defendant for the exercise

---

[9] The out-of-circuit authority construing Application Note 4(E) on which Cohen relies -- United States v. Hall, 704 F.3d 1317 (11th Cir. 2013) and United States v. Rabiu, 721 F.3d 467 (7th Cir. 2013) -- is not to the contrary.  By Hall's reasoning, Cohen "used" the payees' personal identifying information by depositing the checks in order to launder them.  See Hall, 704 F.3d at 1322 (determining that the payees' information was "used" once it is "employ[ed] . . . for the purpose for which the conspiracy was intended").  And Rabiu expressly approved this reasoning from Hall. See Rabiu, 721 F.3d at 472-74.

[10] Cohen also asserts that the enhancement cannot apply because "the identify thieves" were never "proven to be [his] co-conspirators."  But, Cohen cites no authority for the proposition that such proof was necessary, as opposed to, for example, mere proof that Cohen knew he was using the payee information in the checks that he was depositing without authority.

- 21 -

of a constitutional right." U.S.S.G. § 3C1.1 cmt. n.2. The enhancement does apply, however, if a defendant exercises his right to testify at trial but commits perjury in the process. Id. § 3C1.1 cmt. n.4.

"A defendant commits perjury when he intentionally gives false testimony under oath on a matter material to the proceedings." United States v. Díaz, 670 F.3d 332, 351 (1st Cir. 2012). A "sentencing court, however, is not required to address each element of perjury in a separate and clear finding" in order to justify application of the enhancement. Mercer, 834 F.3d at 49 (quoting United States v. Matiz, 14 F.3d 79, 84 (1st Cir. 1994)). "The district court's determination that enhancement is required is sufficient . . . if . . . the court makes a finding of an obstruction of, or impediment to, justice that encompasses all of the factual predicates for a finding of perjury." United States v. Dunnigan, 507 U.S. 87, 94 (1993).

The District Court found the following parts of Cohen's testimony not credible: that he had thirty to forty copies of driver's licenses for tax refund check payees at one point, of which all but the small number of licenses that were produced at trial had been stolen; that he did not know the tax refund checks were fraudulently obtained despite there being "no good reason for somebody to be paying him a fee for cashing . . . United States Treasury checks" that were "as good as gold"; and that he did not

recollect any of the phone calls with one bank officer who had testified about those calls. Insofar as these findings sufficed to show that Cohen had committed perjury in testifying at trial, Cohen's contention that he is being "punished" for "exercising his constitutional right to testify" is clearly without merit under our precedent. See Mercer, 834 F.3d at 49; see also Dunnigan, 507 U.S. at 96 ("Respondent cannot contend that increasing her sentence because of her perjury interferes with her right to testify, for we have held on a number of occasions that a defendant's right to testify does not include a right to commit perjury.").

Turning to Cohen's challenges to the findings themselves, we first consider his contention that they were flawed because the District Court "omitt[ed] necessary findings of intent and of the claimed falsehoods significant hindrance to the prosecution." But the findings in fact encompassed, either expressly or impliedly, each of the elements of perjury -- i.e., "that the defendant was untruthful at trial with respect to material matters in this case . . . [b]y virtue of [the defendant's] failure to give truthful testimony on material matters that were designed to substantially affect the outcome of the case." See Dunnigan, 507 U.S. at 95-96 (emphasis omitted). We note in this regard that the testimony that the District Court identified as untruthful was plainly relevant to Cohen's mens rea.

Accordingly, there was no error due to a lack of completeness in the findings. See United States v. Fermin, 771 F.3d 71, 82 (1st Cir. 2014) (affirming district court obstruction-of-justice enhancement where district court did not make a materiality finding, but testimony supporting enhancement was "obviously material" (quoting United States v. Campbell, 61 F.3d 976, 984 (1st Cir. 1995))); Matiz, 14 F.3d at 84 (affirming the district court's finding of perjury though "the court was not explicit as to whether [the defendant's] testimony was material" because "the record demonstrate[d]" that the testimony was material); see also Mercer, 834 F.3d at 49 (affirming district court's obstruction-of-justice enhancement even though the court was not explicit with respect to a "willfulness" finding for perjury).

Cohen also argues that the District Court clearly erred in making certain findings. Cohen points out that the District Court had to be "reminded that not all [driver's] licenses were missing." But the District Court clarified at sentencing that it deemed Cohen's testimony regarding the licenses untruthful because it found suspect his testimony that the reason he no longer had "[thirty] or [forty] licenses" in his possession had to do with a car being stolen in 2012. As the record adequately supports that finding, this aspect of Cohen's challenge fails.

Cohen also claims that the District Court erroneously stated that one bank had informed Cohen that his actions amounted

to "fraud," when the phrase used by the bank was actually "check-cashing." But, when Cohen pointed out the precise testimony at sentencing, the District Court clarified that its "conclusion . . . was that the inference can be drawn from what each of [the] banks told [Cohen], when they refused to accept any more of these [tax refund] checks in his account, . . . that there was a big problem and it was fraud." Thus, this aspect of his challenge fails as well.

Finally, we reject Cohen's challenge to the District Court's finding that Cohen was not truthful in testifying that he had no recollection of having had phone calls with a particular bank official. The District Court supportably found the bank officer to be "very careful, very scrupulous, and [that] his investigation was very meticulous." Moreover, the official testified at trial that he had multiple calls with Cohen in which he made clear to Cohen that the bank was suspicious about atypical check-cashing activity in his account and that he told Cohen that the bank's interactions with the IRS and the Massachusetts Division of Banking indicated that checks in Cohen's account "should not have been issued" and that Cohen was not licensed to operate a check-cashing business in Massachusetts. We thus conclude that the District Court did not clearly err in finding incredible Cohen's claims to have absolutely no recollection of these calls.

- 25 -

That leaves only Cohen's argument that the imposition of the obstruction-of-justice enhancement, which requires "willful" obstruction, was erroneous given that the District Court provided the jury with a willful blindness instruction.  In challenging the application of the obstruction enhancement below, Cohen argued that, in light of the willful blindness instruction, "his testimony in the eyes of the jury may have made him a damned fool, but that's not the same thing as finding that he's a damned lying fool . . . ."  The District Court concluded, however, that a willful blindness instruction is not preclusive of a finding that the defendant perjured himself in testifying at trial.

On appeal, Cohen does not develop a challenge to this conclusion but instead merely asserts that the District Court "wrongly imposed the enhancement upon one seen by the jury as willfully blind but not necessarily consciously obstructive."  We, thus, deem this underdeveloped argument waived.  Zannino, 895 F.2d at 17.  Moreover, we note that, in any event, there is Circuit precedent that affirms sentences including such an enhancement in cases in which a willful blindness instruction was given.  See, e.g., Fermin, 771 F.3d at 79-82; United States v. Camuti, 78 F.3d 738, 744-45 (1st Cir. 1996).

## IV.

For the foregoing reasons, Cohen's convictions and sentences are **affirmed**.