NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

STATE OF ARIZONA, *Appellee,*

*v.*

ERIC TSINNIJINNE ANDERSON, *Appellant.*

No. 1 CA-CR 22-0304
FILED 5-25-2023

Appeal from the Superior Court in Coconino County
No. S0300CR201800779
The Honorable Stacy Lynn Krueger, Judge

**AFFIRMED**

COUNSEL

Arizona Attorney General's Office, Phoenix
By Eric Knobloch
*Counsel for Appellee*

Coconino County Legal Defender's Office, Flagstaff
By Joseph Adam Carver
*Counsel for Appellant*

## MEMORANDUM DECISION

Judge Daniel J. Kiley delivered the decision of the Court, in which Presiding Judge Maria Elena Cruz and Judge James B. Morse Jr. joined.

**K I L E Y**, Judge:

¶1        Eric Tsinnijinne Anderson appeals his convictions and sentences for sexual assault and kidnapping. For the following reasons, we affirm.

### FACTS AND PROCEDURAL BACKGROUND

¶2        Viewed in the requisite light most favorable to upholding the jury's verdicts, *see State v. Kindred*, 232 Ariz. 611, 613, ¶ 2 (App. 2013), the evidence in the record shows the following:

¶3        On the evening of July 17, 2018, N.T., a former romantic partner of Anderson's who was in a long-term relationship with Anderson's brother Anthony, visited Anderson, Anderson's then-fiancée A.C., and others at Anderson's home in Page, Arizona. Throughout the evening, N.T., Anderson, and A.C. consumed alcoholic beverages.

¶4        At some point, N.T. went to sleep in an unoccupied bedroom. Several hours later, she was awakened by "pressure" on "the back of [her] leg" and looked up to see Anderson standing over her. The shorts and underwear she was wearing when she went to bed had been removed. Anderson started "kissing" and "licking" her face and neck while telling her "that he knows that [she] miss[es] this." When N.T. told Anderson to stop and tried "pushing [him] away," he pressed his forearm against her collarbone to hold her down while he digitally penetrated her vulva. Unable to breathe, N.T. struggled to free herself when she suddenly urinated and then fell off the bed. She then got up, ran from the bedroom, and left the house through the front door as Anderson called after her, "no one's going to believe [you]" and "[you] know [you] wanted it." As A.C. later testified at trial, after N.T. exited through the front door "screaming," Anderson walked "really fast" out the back door.

¶5        N.T. ran to a neighbor's house and banged on the front door while screaming, prompting the neighbor to call 911. When Sergeant Clouse responded to the scene, he found N.T. crouching behind a car on a nearby

street. As Clouse later testified, N.T. was "sobbing" and "very upset," and she was not wearing "any pants or shorts or anything." Clouse's body-worn camera recorded his interaction with N.T.; the video shows her crying and gasping for breath while telling Clouse that Anderson touched and choked her.

¶6         Meanwhile, Officer Sandoval arrived at Anderson's home. Walking quickly through the backyard with a flashlight, he did not see Anderson, so he left to search elsewhere. Returning moments later, Sandoval noticed Anderson laying on his back on the roof of the home, partly concealed by overhanging tree branches. Sandoval told Anderson to climb down from the roof. Anderson complied, and Sandoval arrested him. As Sandoval was placing Anderson in the back of his patrol car, he heard Anderson call out to A.C., "I'm not going to see you for a while."

¶7         After Anderson was arrested and taken from the scene, the responding officers sought and obtained A.C.'s consent to search the home. During their search, they noticed the odor of urine in the bedroom in which N.T. had been sleeping that evening. In the same room, they found her shorts on the floor and her underwear on the bed.

¶8         Two days later, N.T. went to a hospital, where she underwent a sexual assault examination. The examination revealed bruises on N.T.'s upper right arm and shoulder. The nurse conducting the examination took body surface swabs from N.T.'s face and neck; the swabs tested positive for the presence of male DNA.

¶9         The State charged Anderson with sexual assault and kidnapping, both Class 2 felonies. Before trial, Anderson moved *in limine* to admit evidence that, several years earlier, N.T. had purportedly made a false sexual assault allegation against Anderson's brother Anthony. Anderson also moved *in limine* to admit evidence that, when intoxicated, N.T. becomes "out of control angry" and "will fabricate stories about people hurting her."

¶10         The superior court held an evidentiary hearing on Anderson's motions. Anthony testified that N.T. "routinely" drinks to excess, and that, when she does, "she'll become angry" and "accuse people" of harming her. He went on to describe two incidents in which N.T. exhibited such behavior. The first occurred in March 2021, when N.T., while intoxicated, began hitting herself and then called the police to accuse Anthony of hitting her. According to Anthony, he recorded N.T.'s actions that evening and

played the recording for the police when they arrived to disprove N.T.'s report that he had hit her.

¶11        The second incident occurred in August 2012. According to Anthony, he returned home from work late one evening when N.T.'s sister T.T. intercepted him outside the home and warned him "not to go inside because [N.T.] was intoxicated." At that point, Anthony testified, N.T., who was "really drunk," "ran out" of the house and "yelled out, 'I've been raped; I've been raped.'" After Anthony admitted on cross-examination that N.T. did not state when or where she had been raped or identify the perpetrator, Anderson's lawyer attempted to elicit testimony from Anthony about something T.T. said that led him to interpret N.T.'s statement "I've been raped" as an accusation that Anthony had raped her that evening. The court sustained the State's hearsay objection, and Anderson made no offer of proof about what T.T. purportedly said to Anthony.

¶12        The court ruled that, pursuant to Arizona Rule of Evidence ("Rule") 608(a), Anderson would be permitted to elicit testimony from Anthony at trial "as to reputation or opinion of [N.T.'s] truthfulness or untruthfulness." Anderson's counsel then stated, "I'm asking to get into specific instances," referring to the August 2012 and March 2021 incidents that Anthony described in his testimony. The court held that Anthony's testimony about those specific instances of conduct was not admissible under Rules 404 or 405 and that Anderson had not met his burden of establishing the admissibility of either incident under A.R.S. § 13-1421(A)(5). Because the March 2021 incident involved no accusation of sexual misconduct, the court found that only the August 2012 incident was eligible to "be considered for admission under A.R.S. § 13-1421(A)(5)." The court went on to hold that Anderson had not met his statutory burden of establishing that N.T.'s August 2012 statement "I've been raped" was false, and that, in any event, N.T.'s statement "would also be precluded" as "highly inflammatory and prejudicial." The court cited Rule 403 as an alternative basis for precluding evidence of the August 2012 incident.

¶13        Anderson did not testify or present witnesses at trial and made no attempt to elicit reputation or opinion evidence regarding N.T.'s propensity for violence, untruthfulness, or any other character trait.

¶14        The jury found Anderson guilty as charged. The superior court imposed concurrent prison sentences, the longest being a mitigated six-year term for the sexual assault count. This timely appeal followed. We have jurisdiction under A.R.S. §§ 12-120.21(A)(1), 13-4031, and -4033(A)(1).

**DISCUSSION**

**I. The Superior Court Did Not Abuse Its Discretion in Finding that Anderson Failed to Establish the Admissibility of N.T.'s August 2012 Statement "I've Been Raped."**

¶15          A.R.S. § 13-1421, Arizona's "rape shield" law, permits the admission at trial of evidence of specific instances of a victim's conduct only in limited circumstances. As relevant here, the statute allows admission of a victim's prior statement accusing another of sexual misconduct if the proponent of the evidence establishes, by clear and convincing evidence, that: (1) the prior accusation was false; (2) the prior accusation is relevant to an issue in the pending case; and (3) the prejudicial nature of the prior accusation does not outweigh its probative value. A.R.S. § 13-1421(A)(5).

¶16          Anderson challenges the superior court's preclusion of evidence of the statement N.T. made in August 2012. "We review a trial court's decision to preclude evidence under [A.R.S.] § 13-1421 for an abuse of discretion." *State v. Herrera*, 232 Ariz. 536, 549, ¶ 38 (App. 2013).

          a.          **The superior court did not abuse its discretion in finding that Anderson failed to establish, by clear and convincing evidence, that N.T.'s August 2012 statement was a false accusation against Anthony.**

¶17          In support of his challenge to the court's ruling precluding evidence of N.T.'s August 2012 statement "I've been raped," Anderson raises a variety of arguments, many of which were not raised below and are unsupported by the record.

¶18          Interpreting N.T.'s statement "I've been raped" as an accusation that Anthony raped her that evening, Anderson argues that the court should have found the statement admissible under A.R.S. § 13-1421(A)(5) because, he contends, Anthony "denied" the accusation and "[t]he court did not find Anthony incredible."[1] Moreover, Anderson goes on, N.T.'s accusation that Anthony raped her that evening was obviously

---

[1] Anderson's assertion that Anthony denied having raped N.T. is not supported by the record. At no point during the evidentiary hearing was Anthony asked whether he had, in fact, raped N.T., and at no point did he deny having done so.

false because it would have been "factually impossible" for Anthony to do so since he was at work when the rape allegedly occurred.

**¶19**     Anderson's argument assumes that N.T.'s statement "I've been raped" was intended as an accusation that the rape had occurred that evening and that Anthony was the perpetrator. This assumption is unwarranted; N.T.'s statement says nothing about who had raped her or when or where the rape occurred. As the superior court correctly found, N.T.'s statement is insufficiently specific to be construed as an accusation that Anthony had raped N.T. that evening.

**¶20**     Anderson argues that, while N.T.'s statement "I've been raped" may be ambiguous on its face, something T.T. said to Anthony that night filled in the missing content, clarifying that N.T.'s statement was intended as an accusation that Anthony had raped her that evening. Because "the hearsay rules do not apply at evidentiary hearings," he asserts, the court erred in sustaining the State's hearsay objection when Anderson's counsel tried to question Anthony at the pretrial hearing about what he learned from T.T.

**¶21**     Because Anderson made no offer of proof at the pretrial hearing on his motions *in limine*, the record does not make clear what, exactly, T.T. told Anthony that purportedly clarifies what N.T. meant when she said "I've been raped." Indeed, in his opening brief, Anderson admits as much, acknowledging that "we don't know exactly what" T.T. told Anthony. Rather than accepting blame for his failure to make an offer of proof, however, Anderson faults the trial judge for not "direct[ing] an offer of proof." Because it is the proponent of the evidence who has the "obligation to make an offer of proof," *see Coleman v. Amon*, 252 Ariz. 107, 114, ¶ 25 (App. 2021), Anderson cannot avoid the consequences of his failure to make an offer of proof by shifting blame to the judge.

**¶22**     Absent an offer of proof, we cannot determine whether what T.T. told Anthony that night may have shed any light on what, exactly, N.T. meant when she said "I've been raped." *See State v. Zaid*, 249 Ariz. 154, 157, ¶ 8 (App. 2020) ("An offer of proof serves two purposes: to put the trial court in a better position to determine whether it would be erroneous to exclude the evidence, and to enable an appellate court to determine whether any error was harmful."). Anderson's failure to make an offer of proof alone warrants denying relief on this claim. *See* Ariz. R. Evid. 103(a)(2) ("A party may claim error in a ruling to . . . exclude evidence only if," *inter alia*, the party "informs the court of its substance by an offer of proof, unless the substance was apparent from the context."); *see also State v. Thompson*,

252 Ariz. 279, 293, ¶¶ 41-42 (2022) (holding that "[t]he trial court did not abuse its discretion" in precluding evidence under Rule 403 of murder victim's alleged participation in criminal activity, in part because "the record does not reflect precisely what evidence was precluded").

¶23    In any event, Anderson's argument that the superior court erred at the evidentiary hearing in precluding Anthony's testimony about what T.T. said to him in August 2012 is unavailing. While the court is not bound by the Rules of Evidence *at a pretrial hearing* to determine the admissibility of evidence, Ariz. R. Evid. 104(a), the Rules of Evidence apply *at trial* and would have precluded Anthony from telling the jury what T.T. said to him that purportedly illuminates the meaning of N.T.'s statement "I've been raped." Because Anderson called neither N.T. nor T.T. as a witness at the evidentiary hearing, he presented no evidence at that hearing that would have been admissible at trial to help the jury interpret the meaning of N.T.'s non-specific statement. Anderson cannot possibly show prejudice from the court's preclusion, at a pretrial hearing on his motions *in limine*, of hearsay testimony that would have been inadmissible at trial anyway. *See State v. Cook*, 172 Ariz. 122, 125 (App. 1992) (rejecting defendant's challenge to order denying his motion for trial continuance where "no prejudice resulted to [defendant]").

¶24    In his testimony at the evidentiary hearing, Anthony added that, after N.T. yelled "I've been raped," N.T.'s other sister, S.T., "came out of [the] house, ran towards [him], and just hit [him]." S.T.'s assault on Anthony, Anderson now argues, confirms that N.T.'s contemporaneous statement was intended as an accusation against Anthony. "Why would [S.T.] rush out to attack Anthony as soon as he got home," he asks, "if N.T. hadn't just accused him of a recent sexual assault?"

¶25    Anderson's suggestion that S.T.'s act of striking Anthony after N.T. yelled "I've been raped" somehow proves that N.T.'s statement was false requires an unwarranted leap of logic. At most, the fact that S.T. hit Anthony indicates that *S.T. believed* that Anthony had raped N.T. But S.T.'s interpretation of N.T.'s statement "I've been raped" does not support a finding that N.T.'s statement constitutes a false accusation against Anthony.

¶26    Further, Anderson never argued at the pretrial evidentiary hearing that S.T.'s actions that evening were relevant to show that N.T. falsely accused Anthony of rape. Because the prosecutor had no opportunity to respond to this argument, and the court no opportunity to consider it, we find this argument waived and will not consider it further.

*See Trantor v. Fredrikson*, 179 Ariz. 299, 300 (1994) ("Because a trial court and opposing counsel should be afforded the opportunity to correct any asserted defects before error may be raised on appeal, absent extraordinary circumstances, errors not raised in the trial court cannot be raised on appeal.").

> **b.     The superior court did not abuse its discretion in finding that Anderson failed to establish that the probative value of N.T.'s August 2012 statement outweighed the opposing considerations set forth in A.R.S. § 13-1421(A)(5) and Rule 403.**

**¶27**     Nowhere in his opening brief does Anderson challenge the superior court's determination that he failed to meet his statutory burden to establish that the probative value of N.T.'s August 2012 statement outweighed its "inflammatory or prejudicial nature." A.R.S. § 13-1421(A)(5). On the contrary, Anderson denies that A.R.S. § 13-1421(A)(5) requires a balancing of the probative value of proffered evidence against its prejudicial nature. According to Anderson, once the proponent of evidence of a prior false accusation of sexual misconduct presents "clear and convincing evidence" that the "alleged victim's previous claims of sexual assault were actually false," the court's inquiry is at an end. Evidence of a prior false allegation is necessarily admissible, Anderson contends, because "preclusion fails to serve any legitimate goals of the rape shield statute."

**¶28**     Anderson's argument ignores the express language of A.R.S. § 13-1421(A)(5), which makes clear that whether the victim in a sexual assault case made a prior "false allegation[] of sexual misconduct" and whether "the inflammatory or prejudicial nature of" the prior false allegation "outweigh[s] the probative value of the evidence" are two separate inquiries.

**¶29**     Because Anderson does not challenge the superior court's determination under A.R.S. § 13-1421(A)(5) that the probative value of N.T.'s August 2012 statement was outweighed by the prejudicial nature of the evidence, we consider any such argument waived. *See State v. Barraza*, 209 Ariz. 441, 447, ¶ 20 (App. 2005).

**¶30**     Likewise, Anderson does not challenge the superior court's related determination that the probative value of the evidence was outweighed by other Rule 403 considerations. *See* Ariz. R. Evid. 403 ("The court may exclude relevant evidence if its probative value is substantially outweighed by a danger of . . . unfair prejudice, confusing the issues, misleading the jury, undue delay, [or] wasting time[.]"). Anderson has

therefore waived any challenge to the court's Rule 403 balancing. *See Barraza*, 209 Ariz. at 447, ¶ 20. The court's unchallenged determinations that the probative value of the August 2012 statement was outweighed by opposing considerations set forth in A.R.S. § 13-1421(A)(5) and Rule 403 provide a sufficient basis to affirm the court's preclusion order.

**¶31**     An issue not properly presented in the parties' briefing may nonetheless be reviewed for fundamental error. *Id.* at 447, ¶ 21; *see also State v. Fernandez*, 216 Ariz. 545, 554, ¶ 32 (App. 2007) ("[W]e will not ignore [fundamental error] when we find it."). Fundamental error is "error" that "went to the foundation of the case, . . . took from the defendant a right essential to his defense, *or* . . . was so egregious that he could not possibly have received a fair trial." *State v. Escalante*, 245 Ariz. 135, 142, ¶ 21 (2018).

**¶32**     The order precluding Anthony from testifying that N.T. yelled "I've been raped" one evening in August 2012 cannot possibly be said to have denied Anderson a fair trial or to otherwise constitute fundamental error. N.T.'s statement that she had been raped by an unidentified person on an unspecified occasion was clearly more likely to confuse than assist the jury in determining whether Anderson was guilty of the crimes he was charged with committing six years later.

**¶33**     For the same reasons, the superior court's unchallenged preclusion of evidence of N.T.'s August 2012 statement under Rule 403 could not possibly constitute fundamental error. "Balancing of Rule 403 factors" is "a matter particularly and appropriately left to the trial court's discretion," *State v. Rose*, 231 Ariz. 500, 513, ¶ 62 (2013), and we will not substitute our judgment for that of the superior court. *See also United States v. Cohen*, 887 F.3d 77, 85-86 (1st Cir. 2018) (stating that trial court "has wide discretion in steadying the Rule 403 seesaw," and "[o]nly rarely—and in extraordinarily compelling circumstances—will we, from the vista of a cold appellate record, reverse a [trial] court's on-the-spot judgment concerning the relative weighing of probative value and unfair effect") (citation omitted).

**II. Anderson's Claim that the Superior Court Improperly Precluded Reputation Evidence is Not Supported by the Record.**

**¶34**     Anderson argues that the superior court abused its discretion by "prevent[ing] [him] from presenting evidence of N.T.'s reputation for 'out of control' behavior while intoxicated." He asserts that, because he anticipated that the State would present evidence at trial that "N.T. was screaming and highly distressed" when the police arrived at the scene in

July 2018, he "wanted to present evidence that N.T. had a reputation for getting 'out of control angry' when intoxicated." Such evidence, he contends, would show that N.T.'s emotional demeanor as seen in Sergeant Clouse's body-worn camera video resulted from her intoxication and not from anything Anderson had done. Noting that the State argued to the jurors that N.T.'s evident distress "indicated she was telling the truth" about Anderson sexually assaulting her, Anderson complains that the court's evidentiary rulings left him unable to rebut the State's argument with evidence of N.T.'s "history of hysterical behavior while intoxicated."

¶35        Anderson misstates both the position he took in the superior court and the superior court's rulings. When Anderson moved *in limine* for leave to present evidence of N.T.'s "character trait" for "becoming angry, violent, and vicious to the point of fabricating wrongs being done to her" when she "becomes intoxicated," he did not identify the specific type of evidence he sought to offer to establish this purported character trait. At a prior comprehensive pretrial conference, Anderson agreed that evidence of specific instances of N.T.'s intoxication on other occasions was inadmissible.[2] At the evidentiary hearing on the motions *in limine*, however, Anderson changed his position, seeking leave to present evidence of specific instances of N.T.'s conduct while intoxicated in August 2012 and March 2021 to establish her purported propensity for "becom[ing] irate and angry with people and to fabricate accusations." Such evidence, he argued, would bolster his defense that N.T. "fabricated" the "bad actions" she accused him of. The superior court properly held that neither Rule 404 nor 405 permitted Anderson to elicit testimony from Anthony of specific instances of N.T.'s prior conduct to attack her credibility. *See State v. Gilfillan*, 196 Ariz. 396, 404, ¶ 27 n.5 (App. 2000) ("Opinion and reputation evidence may be admitted to prove a person's character for truthfulness if attacked, but specific past acts of untruthfulness may be excluded by the trial court if unrelated to the instant situation."). The court went on to hold that Anderson could properly attack N.T.'s credibility at trial with reputation and opinion evidence pursuant to Rule 608, but Anderson offered no such evidence at trial.

¶36        Although Anderson changed his position during the proceedings below about whether he sought to introduce evidence of N.T.'s reputation for making false accusations when intoxicated or evidence of

---

[2] When the court asked if Anderson objected to restricting evidence of N.T.'s alcohol consumption to the evening of July 17, 2018, defense counsel responded that Anderson did not object, admitting that "there's no relevance" to N.T.'s alcohol consumption on any other occasion.

specific instances of her conduct in making false accusations on prior occasions, and although Anderson offered differing theories for the admissibility of such evidence, at no point did Anderson present the argument he now raises on appeal. At no point, in other words, did Anderson argue to the superior court that evidence of N.T.'s reputation for being agitated when intoxicated, or of specific instances of such conduct, was admissible to provide an alternative explanation for N.T.'s emotional demeanor on the evening of July 17, 2018. Because he never presented that argument to the superior court, he cannot obtain relief by raising it for the first time on appeal. S*tate v. Moody*, 208 Ariz. 424, 455, ¶ 120 (2004) (explaining that evidentiary objections waived if raised for the first time on appeal); *see also State v. Blakley*, 204 Ariz. 429, 438, ¶ 41 (2003) (holding challenge to ruling excluding evidence was "waived" because defendant "never presented the trial court with a legal basis for admitting" the excluded evidence).

¶37 Anderson argues that the court's evidentiary rulings, taken as a whole, violated his "fundamental constitutional right to present a complete defense."

¶38 The Due Process Clause of the Fourteenth Amendment to the United States Constitution guarantees the right of criminal defendants to "be afforded a meaningful opportunity to present a complete defense." *California v. Trombetta*, 467 U.S. 479, 485 (1984). The right is not, however, "without limitations," *State v. Gentry*, 247 Ariz. 381, 385, ¶ 15 (App. 2019), and does not bar a trial court from excluding evidence simply because "the defendant would prefer to see that evidence admitted," *Crane v. Kentucky*, 476 U.S. 683, 690 (1986). The right to present a complete defense does not, in other words, prevent courts from "exclud[ing] evidence through the application of evidentiary rules." *Id.* Because the superior court did not abuse its discretion in applying A.R.S. § 13-1421(A)(5) or the relevant evidentiary rules, the court's evidentiary rulings did not violate Anderson's right to present a complete defense.

## III.    The Superior Court Did Not Err in Giving a Flight Instruction.

¶39 Over Anderson's objection, the court instructed the jury as follows:

> In determining whether the state has proved the defendant guilty beyond a reasonable doubt, you may consider any evidence of the defendant's running away or hiding, together with all the other evidence in the case. You may also consider

the defendant's reasons for running away or hiding. Running away or hiding after a crime has been committed does not by itself prove guilt.

**¶40**        Anderson contends the flight instruction was unwarranted because he did not leave the crime scene and his presence on the roof of his home when the police arrived at the scene "is insufficient to establish an inference of hiding or concealment." "[J]ust because he was on the roof of his own home when the police arrived," he insists, doesn't prove he was "hiding."

**¶41**        "Instructing on flight is proper when the defendant's conduct manifests a consciousness of guilt." *State v. Cutright*, 196 Ariz. 567, 570, ¶ 12 (App. 1999), *disapproved on other grounds by State v. Miranda*, 200 Ariz. 67, 69, ¶ 5 (2001). Evidence that the defendant departed the crime scene is not necessary to justify a flight instruction; evidence that the defendant attempted to hide, rather than flee, may support such an instruction. *State v. Hunter*, 136 Ariz. 45, 49 (1983) ("[E]ither fleeing the scene as upon open pursuit or concealment is sufficient to support a flight instruction."); *see also Carter v. State*, 121 P.3d 592, 599 (Nev. 2005) (holding that evidence that defendant "concealed himself under a pile of clothes in his apartment" while defendant's wife misled police about his whereabouts "supported the [flight] instruction"). We review the trial court's decision to give a flight instruction for abuse of discretion. *State v. Solis*, 236 Ariz. 285, 286, ¶ 6 (App. 2014).

**¶42**        Evidence that, as soon as N.T. ran from the house screaming, Anderson walked out "really fast" through the back door, and soon thereafter was found on the roof of the house, supports an inference that he was attempting to conceal himself in anticipation of the arrival of the police. Indeed, Officer Sandoval did not see Anderson during his initial search of the backyard, thus indicating that Anderson not only *attempted* to conceal himself, but *succeeded*, even if only temporarily. Although Anderson posits the existence of alternative explanations for his presence on the roof (asserting, for example, that he "was probably asleep" up there), an alternative explanation for the defendant's actions does not preclude giving a flight instruction. *See State v. Parker*, 231 Ariz. 391, 404, ¶ 50 (2013) (stating that defendant's "explanation for his flight did not preclude the trial court from giving a flight instruction" but "simply created a fact question for the jury to decide"). We find no error in the giving of a flight instruction. *See State v. Swinburne*, 116 Ariz. 403, 414 (1977) (holding that a defendant's "activities" that "constitute concealment . . . support the giving of an instruction on flight").

¶43        In his reply brief, Anderson argues, for the first time, that the court abused its discretion in giving a flight instruction because he asserted a consent defense. According to Anderson, a flight instruction "assum[es] a crime was committed," and so cannot properly be given "[w]hen the central issue at trial is whether a crime occurred at all." Anderson cites no authority for this novel proposition, and we are aware of none. *See Carter*, 121 P.3d at 594, 599 (holding that trial court did not abuse its discretion in giving flight instruction at sexual assault trial where defendant asserted that charged sexual acts were consensual). In any event, Anderson never raised this argument in his opening brief (or at trial, for that matter), and so he has waived it. *See State v. Brown*, 233 Ariz. 153, 163, ¶ 28 (App. 2013) ("Arguments raised for the first time in a reply brief . . . are waived.").

¶44        Even assuming that the court erred in giving the flight instruction, the error was harmless. *See Solis*, 236 Ariz. at 288, ¶ 14 (finding improperly given flight instruction was harmless error). The court did not tell the jurors that flight or concealment *had in fact occurred*, nor did the flight instruction lead the jurors to conclude that flight or concealment was, by itself, conclusive of guilt. On the contrary, by its terms, the instruction informed the jurors that "[r]unning away or hiding after a crime has been committed *does not by itself prove guilt*." (Emphasis added.) The court further instructed the jurors that, "[a]s you determine the facts, . . . you may find that some instructions no longer apply," thus making clear that the jurors were free to disregard the flight instruction if they found that no flight or concealment had occurred.

¶45        Moreover, the evidence of Anderson's guilt was overwhelming and included N.T.'s testimony describing the events of July 17, 2018; the physical evidence that corroborated N.T.'s account of those events, including the odor of urine in the bedroom where she was sleeping and the male DNA found on swabs taken from her face and neck; N.T.'s hurried departure from the home naked from the waist down; Anderson's statements to N.T. as she ran from the home (*i.e.*, "no one's going to believe you" and "you know you wanted it"); A.C.'s testimony that, as soon as N.T. ran out the front door screaming, Anderson left "really fast" through the back door; and Anderson's statement to A.C. as he was being taken away by the police (*i.e.*, "I'm not going to see you for a while."). In view of the overwhelming evidence of guilt, any error in giving the flight instruction was harmless. *State v. Wilson*, 253 Ariz. 191, 198-99, ¶ 28 (App. 2022) ("If evidence is so overwhelming that any reasonable jury could only reach a conclusion of guilt, we can find error harmless.").

## CONCLUSION

¶46        Anderson's convictions and sentences are affirmed.



AMY M. WOOD • Clerk of the Court
FILED:    AA